315 So.2d 656 (1975)
QUALITY FINANCE CO. OF DONALDSONVILLE, INC.
v.
Kermit "Hart" BOURQUE, Clerk and Recorder, et al.
No. 55758.
Supreme Court of Louisiana.
June 23, 1975.
Rehearing Denied July 25, 1975.
*657 Robert R. Rainer, W. Frank Gladney, Baton Rouge, for defendant-applicant.
Raymond B. Gautreau, Donaldsonville, for plaintiffs-respondents.
SUMMERS, Justice.
The narrow issue before the Court is whether Quality Finance Company (transferee of mortgaged property under an act of giving in payment [dation enpaiement] from its mortgage debtors Marvin and Patricia Gros) is entitled to an order mandating the Clerk of Court to cancel a judicial mortgage and lien inferior in rank to the mortgage formerly held by Quality Finance which it cancelled.
The trial judge ordered cancellation, and the First Circuit affirmed. Certiorari was granted on the application of Lane Wood & Company, the holder of an inferior judicial mortgage; the State of Louisiana, through the Department of Employment Security, a lien holder of inferior rank; and Kermit "Hart" Bourque, the Clerk and Recorder of Ascension Parish. 307 So. 2d 625.
By stipulation and the pleadings these facts are established: Marvin and Patricia Gros were insolvent on April 3, 1973. Installment payments due on mortgages affecting their property were delinquent. Five encumbrances were registered in the mortgage records of Ascension Parish bearing upon real estate owned by them in the Crescent Place Subdivision of Ascension Parish. The conventional mortgages also affected certain compressors used by Marvin Gros in his business. In the order of their registry, on April 3, 1973 these obligations consisted of 1) a mortgage in favor *658 of Ascension Savings and Loan Association with a principal balance of $20,378.72, with interest amounting to $450; 2) a mortgage in favor of Quality Finance Company of Donaldsonville, Inc., with a balance of $8,945.55; 3) a judgment in favor of Mrs. Exal D. Gros in the sum of $48,000 with a balance due of $6,000; 4) a lien filed by the Louisiana Department of Employment Security in the amount of $250.02; and 5) a judgment in favor of Lane Wood and Company in the sum of $6,766.65.
At this time, Quality Finance had instituted proceeding to obtain executory process and the sale of the property for the satisfaction of the obligation under its mortgage in the sum of $8,945.55. In order to avoid bankruptcy, to alleviate the costs incident to the foreclosure, and to salvage the compressors described in the mortgage, Marvin and Patricia Gros executed an act of giving in payment transferring the mortgaged real estate to Quality Finance. In consideration of this transfer Quality Finance agreed to cancel its mortgage and assume the payment of the balance due under the mortgage held by Ascension Savings and Loan. The total amount of the indebtedness owed to these two mortgagees was then $29,773.83. This transaction was undertaken by Quality Finance in contemplation of selling the property thus acquired to Jack Hood for $29,000 in accordance with an agreement entered into by them. It was the proceeds of this contemplated sale which Quality Finance planned to apply to the satisfaction of the debts of Marvin and Patricia Gros to Ascension Savings and Loan Association and to its own second mortgage.
After execution of the act of giving in payment, title passed from Marvin and Patricia Gros to Quality Finance and, in compliance with its agreement, Quality Finance caused the inscription of its mortgage to be cancelled from the mortgage records, planning to apply the proceeds of the sale to Hood to the satisfaction and cancellation of the Ascension Savings and Loan mortgage. In preparation for the transfer to him, Jack Hood had his attorney to search the public records and learned of the encumbrances in favor of Mrs. Gros, the Department of Employment Security and Lane Woods & Company. On this finding, Hood's attorney refused to approve title unless the inscription of these three encumbrances were cancelled insofar as the real estate which Hood proposed to purchase. When Quality Finance demanded cancellation, the Clerk of Court refused and a petition for mandamus to compel the cancellation was filed by Quality Finance.
At the trial, by stipulation, Mrs. Exal D. Gros agreed to release the real estate from the effects of the judgment in her favor in consideration of the transfer of the compressors to her. Her judgment, therefore, is no longer involved in this litigation.
An act of giving in payment, except for differences noted in Articles 2655 through 2659 of the Civil Code, has the effect of transferring title the same as the ordinary contract of sale. Jones v. First National Bank, Ruston, La., 215 La. 862, 41 So.2d 811 (1949). The transfer by the debtors Gros to Quality Finance, therefore, effectively divested them of title to the real estate. The conventional transfer, however, did not relieve the property of the mortgage recorded in favor of the Ascension Building and Loan, the lien in favor of the Department of Employment Security or the judicial mortgage in favor of Lane Wood and Company. La.Civil Code arts. 3321 and 3328.
At the time of registry of the various encumbrances against the property of Marvin and Patricia Gros each creditor had the right to assume from the public records that the rank of its claim was established by the priority of the registry. La.Civil Code arts. 2266, 3329; La.R.S.9:2721-22; McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909). Thus the conventional satisfaction and cancellation of any *659 encumbrance by a giving in payment would not have the effect of voiding the obligations owed to other creditors holding recorded conventional mortgages, liens or judicial mortgage which had also attached to the property of the debtor.
As Article 3411 of the Civil Code plainly states, mortgages are extinguished: by the extinction of the thing mortgaged; by the creditor acquiring the ownership of the thing mortgaged; by the extinction of the mortgagor's right; by the extinction of the debt, for which the mortgage was given; by the creditor renouncing the mortgage and by prescription. None of these conditions giving rise to extinction are present in the instant case, except the extinction of the Quality Finance mortgage by virtue of the fact that Quality Finance acquired the ownership of the property on which its mortgage rested. Transfer of the encumbered property did not bring about the extinction of any other encumbrance and could not prejudice the rights of other creditors without their consent, or without a judgment of a court of competent jurisdiction. La.Civil Code arts. 3371 and 3372. For the "law forbids to give in payment to one creditor, to the prejudice of the others, any other thing than the sum of money due." La.Civil Code Art. 2658. Such a transfer conveys the property cum onere, that is, burdened with any previously or subsequently recorded encumbrance. Third District Building Association v. Forschler, 174 La. 828, 141 So. 849 (1932).
Even in the case of voluntary insolvency when the debtor surrenders his property to his creditors, the privileged or mortgaged creditors are not bound by the decision of the majority of other creditors, either in amount or persons. The privileged or mortgaged creditors in that circumstance have the right to require the sale for cash of so much of the property on which their privilege or mortgage rests as will be sufficient to make the amount due to them. La.R.S. 9:2657.
Cancellation of the inscription of the inferior mortgages sought to be cancelled here could have been accomplished by the executory proceeding commenced by the mortgagor. Such a proceeding provides that the purchaser at the foreclosure sale by the sheriff is liable for nothing beyond the purchase price. La.Code Civ.P. art. 2375. And the sheriff gives the purchaser a release from the mortgage, lien, or privilege of the seizing creditor, and from all inferior mortgages, liens and privileges, and he directs the recorder of mortgages to cancel their inscription insofar as they affect the property sold. La.Code Civ.P. art. 2376.
Nevertheless, Quality Finance contends, and the courts below held, that Article 2658 of the Civil Code does not forbid the giving in payment to one creditor when the giving in payment does not prejudice the other creditors. In this case, the argument proceeds, no prejudice resulted to the other creditors for, by stipulation, the property had an "appraised market value" of $29,000, and the giving in payment contemplated the satisfaction of superior encumbrances totaling $29,773.83. Nothing could be gained, it is said, by an expensive foreclosure proceeding, for the property could hardly bring more at a sheriff's sale than the "appraised market value". Therefore, the inferior creditors suffered no prejudice.
The inferior creditors and the Clerk of Court deny that the stipulation entered into by them (that "if witnesses were sworn and testified" they would establish that the "appraised market value" of the property was $29,000) would have the effect Quality Finance asserts it would have. We agree. The fact that they agreed that the appraised market value at the time of the trial was $29,000 does not mean that the property would not bring more at a sheriff's sale, nor does it mean that the property may not later rise in value before a sheriff's sale could be accomplished. Moreover, it deprives them of the right to *660 buy the property in at sheriff's sale if they were inclined to do so. In these respects, therefore, they have been prejudiced.
But notwithstanding the question of prejudice, the inferior creditors cannot have their mortgage or lien cancelled in the manner Quality Finance advocates. They are entitled to expect and demand that the property be sold at sheriff's sale as the law provides. The cases on the subject already decided by this Court support this conclusion. Southern Casualty Company v. Ross, 179 La. 145, 153 So. 673 (1934); Third District Building Association v. Forschler, 174 La. 828, 141 So. 849 (1932); Hamilton et al. v. State National Bank, 39 La.Ann. 932, 3 So. 126 (1887).
For the reasons assigned, the judgments of the trial court and Court of Appeal are reversed and set aside, and plaintiff demands are rejected at its costs.