412 So.2d 1306 (1982)
Sara Renée Crifasi LOSAVIO
v.
Bobby Joseph GAUTHIER, et al.
No. 81-C-2277.
Supreme Court of Louisiana.
April 5, 1982.
Rehearing Denied May 14, 1982.
*1307 Peter J. Losavio, Jr., of Losavio & Weinstein, Baton Rouge, for defendant-applicant.
CALOGERO, Justice.
Bobby Joseph Gauthier, a judgment debtor who secured a discharge in bankruptcy over a year after rendition and recordation of a $6,671.59 judgment against him in favor of Sara Renée Crifasi Losavio, was successful in both lower courts in obtaining an order to have the inscription of that judicial mortgage cancelled from the mortgage records of the East Baton Rouge Parish Clerk of Court's Office.
Gauthier, as a judgment debtor discharged in bankruptcy, is entitled under La.R.S. 9:5166 to have the inscription of any dischargeable judgment cancelled (if rendered twelve months previously) "unless the judgment creditor can prove that he continues to possess a secured interest in the property affected by such judgment."
La.R.S. 9:5166 provides:
Upon rule to show cause by an interested party against the clerk of court and ex officio recorder of mortgages of the several parishes and the recorder of mortgages for the parish of Orleans, the judgment creditor and a judgment debtor discharged in bankruptcy, the court shall order the cancellation of the inscription of any dischargeable judgment rendered twelve months previously unless the judgment creditor can prove that he continues to possess a secured interest in the property affected by such judgment or any judgment rendered in a tort proceeding wherein the judgment debtor's liability arose out of his wilful negligence, or any other judgment otherwise not discharged in bankruptcy. (Emphasis provided.)
At issue in this litigation is what constitutes a secured interest, and whether Losavio possessed a secured interest coincident with and/or after Gauthier's adjudication in bankruptcy.
The trial court, granting judgment for Gauthier, was apparently of the view that for the creditor to have a "secured interest" the value of the property must have exceeded the priming obligations, at the time of adjudication in bankruptcy, for the evidentiary focus was on the value of the property at the time of the adjudication and the trial judge stated that the creditor failed to "show that there was a continuing equity interest in the property."
The Court of Appeal, 400 So.2d 921, relying on Kayda v. Johnson, 252 So.2d 708 (La.App. 1st Cir. 1971), held that the judgment creditor proves he has a secured interest in the property "by showing that the debtor has an equity therein over and above all encumbrances bearing against it" on the date of the bankruptcy adjudication, and that Losavio had not proven that Gauthier's *1308 Palisades Drive property was worth more, on that date, than $114,093.46, the amount of the accumulated priming recorded mortgages.
We granted writs to determine whether the lower courts were correct in ordering the cancellation of the inscription of Losavio's judgment against Gauthier's Palisades Drive property.
When Gauthier was adjudicated a bankrupt in 1978, he was discharged from any personal liability he had in connection with Losavio's judgment. However, under the Bankruptcy Act, a discharge in bankruptcy of the personal debt does not extinguish any lien that may have existed prior to the filing in bankruptcy. Lockwood v. Exchange Bank, 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903). The enforceability of such liens against one who has been adjudicated a bankrupt, is a matter solely governed by state law, provided that such rules do not frustrate the purposes of the Bankruptcy Act. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); 93 A.L.R. 195. Therefore the interpretation of La.R.S. 9:5166, and whether Losavio's lien may be cancelled by virtue of that statute, is a state matter.
It is contended that the term "secured interest" as used in La.R.S. 9:5166, is unrelated to property value; that a judgment creditor with a recorded judgment possesses a lien or secured interest from the time of recordation, irrespective of the value of the property at that time or at the time the judgment debtor filed his petition in bankruptcy. This contention is not supported by the jurisprudence. To the contrary, the cases support the proposition that the judgment creditor possesses a secured interest in the property on and/or after the date of the adjudication in bankruptcy (the date of filing of the petition) only if it can be shown that at the time of the adjudication there was an equity in the property over and above the outstanding priming liens. Braud v. Morgan, 372 So.2d 221 (La. App. 1st Cir. 1979); Kayda v. Johnson, 262 So.2d 171 (La.App. 3rd Cir. 1972), writs denied, 262 La. 469, 263 So.2d 728 (1972); Ferguson v. Citizens Bank and Trust Co., 265 So.2d 250 (La.App. 1st Cir. 1972); Jaubert v. Landry, 15 So.2d 158 (La.App. 1st Cir. 1943); 1A, Collier on Bankruptcy, § 17.29 at ftn. 5 (14th ed., rev. 1976).
In accordance with one of the well recognized purposes of the Bankruptcy Act, "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh" (Local Loan Co. v. Hunt, supra) this Court in 1920 recognized that a judgment lien recorded more than four months prior to the bankrupt's adjudication in bankruptcy, although not extinguished by the bankruptcy adjudication, could not be enforced against the property acquired by the debtor after that bankruptcy adjudication. Schexnailder v. Fontenot, 147 La. 467, 85 So. 207, 208 (1920).
Thereafter, the First Circuit, in Jaubert v. Landry, supra, addressed the question of whether the judgment creditor maintained the right to enforce his judgment lien after the debtor was adjudicated a bankrupt, against property that was disclaimed by the bankruptcy trustee. In Jaubert, decided in 1943, before the enactment of La.R.S. 9:5166 in 1970, the judgment creditor had brought suit to have his judgment revived. The debtor, whose personal liability had been extinguished by his discharge in bankruptcy, contested the revival action contending that he had had no equity in the property at the time of his bankruptcy adjudication over and above the secured balance on the purchase price and his homestead exemption. The court allowed the judgment to be revived, notwithstanding the existence of the homestead exemption, upon finding that there was equity in the property over and above simply the balance due on the priming mortgage.[1]
The court reasoned:

*1309 If at the time of the adjudication in bankruptcy, this homestead was worth considerably more than the balance of the purchase price, this excess would be property owned by the defendant at the time of the adjudication and subject to the mortgage resulting from the recordation of the judgment, and the property could be released from the judicial mortgage by the payment or tender of this excess in value. If, on the contrary, the defendant had shown in this proceeding, or can show in an appropriate proceeding taken against the judgment creditor, that at the time of the adjudication the property set apart to him as a homestead was worth no more than the balance due on the purchase price, he could have the homestead declared free from the judicial mortgage resulting from the recordation of the judgment.
The court in Jaubert concluded that the judgment creditor should not be barred from reviving his judgment where the debtor had an equity in the property at the time of the bankruptcy adjudication above the balance due on the purchase price. That the creditor could not at that time enforce his lien because of the debtor's homestead exemption was of no moment since the status of the debtor's property as his homestead could change in the future, freeing up the equity that existed at the time of the bankruptcy adjudication to permit enforcement of the lien. A judgment inscribed prior to the debtor's adjudication in bankruptcy is enforceable against property the debtor owned on that date, and is unenforceable only as to property acquired by the debtor after the bankruptcy adjudication. Local Loan Co. v. Hunt, supra; Schexnailder v. Fontenot, supra; 1A, Collier on Bankruptcy, § 17.30 (14th ed. rev. 1976)
Jaubert was concerned with equity (value in excess of mortgage lien) and the effect of the homestead exemption. As relates to the equity neither post adjudication mortgage reduction nor post adjudication increase in property value were involved under the facts of that case. The court held that where the debtor possessed some equity in the property at the time of the adjudication in bankruptcy the judicial mortgage remained effective against the property after the adjudication in bankruptcy.
Then, in 1970, La.R.S. 9:5166 was enacted by Act No. 588, § 1. The leading decision interpreting that statute is the First Circuit's Kayda v. Johnson, supra. In that case the judgment debtor, who had received a discharge in bankruptcy after recordation of a judicial mortgage against him, filed a rule to have the inscription cancelled under La.R.S. 9:5166.
Originally the trial court held that the inscription could not be cancelled. On appeal, however, the court remanded the case for further proceedings upon finding that the trial court had erroneously placed the burden of proof on the debtor rather than upon the creditor as required by La.R.S. 9:5166. 252 So.2d 708 (La.App. 1st Cir. 1972). On remand the trial court ordered the inscription cancelled and the creditor appealed that judgment.
On appeal [262 So.2d 171 (La.App. 1st Cir. 1972), writs denied, 262 La. 469, 263 So.2d 728 (1972)] the Court of Appeal, stated:
The 1970 act [La.R.S. 9:5166] created a procedure for the cancellation of inscriptions by rule, provided for necessary parties, and established the burden of proof upon the judgment creditor. In enacting this statute, the legislature did not alter the prior existing substantive law relative to the effect of a judicial mortgage on property owned by the bankrupt at the time of the adjudication.
In recounting what the substantive law was prior to the enactment of La.R.S. 9:5166, the court concluded that "there was no way for the judgment to become effective against the property where the debtor had no equity at his adjudication in bankruptcy because of outstanding conventionally secured obligations," but that "until La. R.S. 9:5166 the judgment debtor had no procedural vehicle for removing the judgment from such property." Nonetheless the Court of Appeal reversed the trial court's ordered cancellation for the reason *1310 that, as in Jaubert v. Landry, supra, there existed at the time of the bankruptcy adjudication equity (value above liens) for the continued attachment (and effect) of the judicial mortgage sought to be cancelled, notwithstanding that the then extant homestead exemption, temporarily at least, impeded enforcement of the judicial mortgage.[2]
Therefore, the Courts of Appeal which have addressed the issue of the enforceability of pre-bankruptcy liens after the bankruptcy adjudication have held that those liens are not enforceable unless the disclaimed property is worth more, at the time of the bankruptcy adjudication, than the outstanding priming liens. Thus, the creditor could not enforce his judgment lien against equity the debtor acquires in the property post-bankruptcy. Jaubert v. Landry, supra. And, it was further held, after the enactment of La.R.S. 9:5166 in 1970, that the inscription of such unenforceable liens could be ordered cancelled. Braud v. Morgan, supra. The courts were careful to distinguish between equity arising after the adjudication, and equity the debtor possessed at the time of the bankruptcy adjudication although such was beyond the creditor's reach because of the homestead exemption. In the latter case, where the debtor did have an equity in the property at the time of the bankruptcy adjudication, notwithstanding that the creditor could not enforce his lien against that equity because of the homestead exemption, the inscription of the judgment lien could not be ordered cancelled from the records. Kayda v. Johnson, supra.
The focus throughout the jurisprudence has consistently been upon the value of the property at the time of the bankruptcy adjudication, and necessarily so, in view of the bankruptcy act's public policy expression that a pre-bankruptcy lien could not affect property acquired after the bankruptcy. Therefore, notwithstanding that the cases discussed above, excluding Schexnailder,[3] did not emanate from this Court, and that in some instances the pertinent language was dicta, we embrace the holdings in those cases.
Denying effect to the pre-bankruptcy lien upon equity arising only after the adjudication in bankruptcy is more in keeping with the public policy underlying the bankruptcy act to permit the bankrupt to "start afresh." That result may not, however, be required by the federal law. Rather, what is determinative is our own state law, in particular, the interpretation reasonably to be given La.R.S. 9:5166.
Relator argues that the language "continues to possess a secured interest in the property" refers to possession of the secured interest at the time of the trial on the rule rather than at the time of the bankruptcy adjudication. We do not agree. The statute is concerned only with judgments that were recorded against the bankrupt prior to the bankruptcy adjudication and which are dischargeable in the bankruptcy proceedings. Thus the more reasonable reading of the statute indicates that "continues to possess", as used therein, is referring to whether the judgment creditor, who had a secured interest in the property prior to the bankruptcy adjudication, "continues to possess" that secured interest at the time of the adjudication even though the debtor's personal obligation on the judgment was discharged. This interpretation of the statute is fortified when we focus upon the apparent intention of the legislature in light of the state of the jurisprudence at the time the statute was enacted,[4] as well as the nature and underlying policies of the bankruptcy law.
*1311 Thus, as we interpret La.R.S. 9:5166 the secured interest in the property which the creditor does or does not continue to possess is determined at the time of the bankruptcy adjudication. If the value exceeds the balance due on all outstanding priming encumbrances at that time, there is a secured interest in the property which the creditor continues to possess. To the extent that the creditor does prove that the value of the property is greater than the amount of the priming liens the creditor proves "that he continues to possess a secured interest" in the property on and after the date of the bankruptcy adjudication. Furthermore, given the interpretation which we place upon La.R.S. 9:5166, with the focus upon property value at the time of the bankruptcy adjudication, it becomes irrelevant whether there is a post adjudication equity buildup, and/or whether that buildup is the result of mortgage reduction or simply enhancement in property value.
Therefore, we must determine whether defendant Gauthier possessed any equity in the Palisades Drive property at the time of his adjudication in bankruptcy over and above the priming secured obligations. To the extent that Gauthier did possess such an equity in the property, Losavio would have continued to possess a "secured interest" in the property. Under La.R.S. 9:5166 the burden of proof is on Losavio, the creditor, to establish that secured interest.
In a case that seemed fairly close on the issue of whether the value of the property exceeded the mortgages which primed Losavio's recorded judgment, we were prompted to grant the writ because of the contention that Gauthier had himself, in an admission against interest, valued the property in his bankruptcy petition at $120,000.00, an amount which would have afforded approximately $6,000.00 of unaffected equity as security for Losavio's $6,671.59 judgment.
This contention concerning the valuation admission appears both in relator's writ application and brief to this Court, and in the Court of Appeal opinion. It is not, however, borne out by the record. Instead the property was valued on Gauthier's bankruptcy petition at $100,000.00, and the priming mortgages stated to be $114,093.46. Consequently, Losavio's position in this litigation, that the property's value exceeded the mortgages which primed respondent's judgment, is not supported by any admission of Gauthier's. Relator's assertion and the Court of Appeal's finding or statement to that effect were simply incorrect.
The other facts and testimony concerning the value of the Palisades Drive property are clearly set forth in the Court of Appeal opinion and will not be fully repeated here. Suffice it to say that Losavio's expert valued the property at $127,000.00 as of August, 1977 when the bankruptcy petition was filed, while the countervailing evidence rested principally on the fact that the property was put on the market in 1976 for eight months with an asking price of $125,000.00, later reduced to $110,000.00, with only a single offer for $95,000.00 having been received. And, as stated above, the property was valued in Gauthier's bankruptcy petition at $100,000.00.[5]
The trial court held that Losavio "did not show that there was a continuing equity interest in the property" and ordered that the inscription of Losavio's judgment be *1312 cancelled. The Court of Appeal affirmed that ruling. Because the factual findings of the lower courts are not clearly wrong and because the lower courts' assessment of the law is also correct, we determine that relator is not entitled to relief.
Relator Losavio did not meet her burden of proof in establishing that she "continues to possess a secured interest" in Gauthier's Palisades Drive property. La.R.S. 9:5166 therefore authorizes cancellation of the inscription of Losavio's judgment.

Decree
We therefore affirm the judgments of the district court and Court of Appeal which ordered cancelled the inscription of relator's $6,771.59 judgment.
AFFIRMED.
LEMMON, J., concurs.
BLANCHE and MARCUS, JJ., dissent and assign reasons.
BLANCHE, Justice (dissenting).
I respectfully dissent. The majority opinion is in error because it equates a "secured interest" with equity. If, at the time of the bankruptcy, the bankrupt had sufficient equity in the property above the secured interest, it would not have been disclaimed. This writer believes that a "secured interest" in the property, whether by contract or operation of law, remains against the property until such interest is either satisfied or cancelled.
There may be instances where a lender will advance sums far in excess of the security at the time they were advanced and secured by a conventional mortgage. In such case, it would seem inequitable to discharge the conventional secured interest in the property because of a lack of equity at the time of the bankruptcy, especially when there was no equity when the secured interest was obtained.
The court of appeal opinions relied upon by the majority are wrong in discharging an in rem lien against property when the lienholder's secured interest has not been satisfied or cancelled.
MARCUS, Justice (dissenting).
I consider that the judgment creditor obtained a "secured interest" in the disclaimed property by recordation of his judgment more than four months before the judgment debtor's adjudication in bankruptcy. 11 U.S.C. § 107(a)(1).[1] His claim was in rem against the property. La.R.S. 9:5166 is a procedural vehicle that permits the cancellation of inscription of any dischargeable judgment rendered twelve months previously "unless the judgment creditor can prove that he continues to possess a secured interest in the property affected by such judgment." Here, the judgment creditor met this burden by proving that his lien (judicial mortgage) against the property was not obtained within four months of the judgment debtor's adjudication in bankruptcy and that he "continues" to possess that "secured interest" in the property. In other words, I consider that the words "secured interest" in the statute refer to the in rem right of the creditor in the property and is no way affected by the debtor's equity or lack thereof in the property.
Moreover, the judgment creditor's lien created vested rights in the debtor's property. This lien was not affected by the debtor's discharge in bankruptcy but attached to property remaining in the hands of the bankrupt as exempt from the bankruptcy act. La.R.S. 9:5166 merely provides a method by which to erase dischargeable judgments which can no longer attach as liens to after-acquired property. To interpret the statute to allow a judgment which is a lien on the debtor's property to be erased is to destroy vested rights in the property without providing for compensation. I consider that the majority opinion *1313 deprives the judgment creditor of a vested right in violation of his constitutional rights.
Accordingly, I respectfully dissent.
NOTES
[1] The property's value was $1,500.00. There was a mortgage balance of $1,300.00. And the homestead exemption at that time was $4,000.00. La.Const., 1921, Art. XI, § 1, as amended by Act No. 42 of 1938.
[2] As in Jaubert, the Court of Appeal in Kayda v. Johnson did not have need to consider equity buildup post adjudication nor any difference between mortgage reduction and value increase as affecting post adjudication equity buildup.
[3] Jaubert v. Landry, 15 So.2d 158 (La.App. 1st Cir. 1972) and Kayda v. Johnson, 252 So.2d 708 (La.App. 1st Cir. 1972), after remand, 262 So.2d 171 (La.App. 1st Cir. 1972), writs denied 262 La. 469, 263 So.2d 728 (1972).
[4] At the time La.R.S. 9:5166 was enacted in 1970, the leading case in this area of the law was Jaubert v. Landry, supra, in which it was expressly stated (note the quotation earlier in this opinion) that the existence of equity in the property at the time of the bankruptcy adjudication was determinative of whether a pre-bankruptcy lien was enforceable against the debtor's property post bankruptcy. Although this was a Court of Appeal decision and not dispositive of the issue before us, consideration of the case is helpful in ascertaining the Legislature's intent in enacting La.R.S. 9:5166.
[5] Relator also makes the argument that, in determining whether the judgment creditor possesses a secured interest in the property, a determination of fair market value should be controlling. He suggests the trial judge was applying some standard other than fair market value, such as liquidity. We agree with the relator that fair market value is the test. We determine from the record, however, that essentially the trial judge applied the proper test, and in any event, that the record supports the fact that the fair market value of the property was something less than $114,000.00 at the time the petition in bankruptcy was filed.
[1] This section was amended and redesignated as 11 U.S.C. 547(b) as part of the Congressional revision of the bankruptcy law. See Pub.L. 95-598, November 6, 1978, 92 Stat. 2549, U.S. Code Cong. & Admin.News 1978, p. 5787. The change only affects cases filed after October 1, 1979. Accordingly, those changes are not relevant to the instant case.