|2CHIASSON, Judge Pro Tem.
Plaintiff Bayou Contractors, Inc. (Bayou) appeals a judgment rendered by the Nineteenth Judicial District Court in and for the parish of East Baton Rouge in suit number 418,671, which judgment was in favor of defendant, James H. “Jim” Brown as Commissioner of Insurance for the State of Louisiana, (Commissioner), in his capacity as receiver and liquidator of ANA Insurance Group (ANA). We vacate a portion of that judgment, reverse another portion, and remand the matter for further proceedings consistent with this opinion.
FACTS
The essential facts of this litigation involve several dates and events, as follows:
April 24, 1992: Nancy Matherne granted to ANA a mortgage to secure a loan of $150,000 on property that she owned in LaPlace, Louisiana.
May 17, 1993: ANA was liquidated and the Commissioner was named as liquidator.
Jione 15, 1993: J. Caldarera & Company, Inc. (Caldarera) entered into a contract (apparently unrecorded) with Ms. Matherne for construction of Oaks II Subdivision on the mortgaged propertyln LaPlace.
November 1993: Bayou, a subcontractor, commenced work at Oaks II, providing labor, materials, equipment and supervision.
May 24, 1994.: Ms. Matherne executed a dation en paiement of the LaPlace property to the Commissioner as ANA’s liquidator.
July 15, 1994: Bayou filed a lien against Caldarera and Ms. Matherne under the Private Works Act, LSA-R.S. 9:4801 et seq.
September 15, 1994: In Brown v. ANA, suit number 388,758(D), Judge J. Michael McDonald, Nineteenth Judicial District Court, canceled Bayou’s lien so the property could be sold; he also ordered $30,000 deposited into the registry of the court from the sales proceeds of the Matherne property. The judgment specified: (1) “This money shall be held in lieu of the said lien.” (2) “All parties shall have whatever rights, if any, they had prior to this judgment to assert any claims or defenses, as provided by law.” (3) “This matter is hereby continued without date, subject to further order of this Court, for the disposition of any such |8claims and/or defenses.” [2] This judgment was not appealed, nor were writs sought by either party.
July 14, 1995: Less than one year subsequent to filing its lien, Bayou filed the instant suit against the Commissioner, suit number 418,671(D) in the Nineteenth Judicial District Court, seeking the principal sum of $22,580 plus interest and costs and any penalties allowed by law. The suit was assigned to Division D, Judge Janice Clark.
January 8, 1996: The Minutes of Court reflect the Commissioner’s motion for summary judgment came on for hearing before Judge Janice Clark.
January 16, 1996: The Minutes of Court reflect Judge Janice Clark signed a judgment granting the Commissioner’s motion for summary judgment, dismissing Bayou’s suit against Brown and ordering the $30,000 deposited into the registry of the court to be released to the Commissioner. (The date written on the judgment is not legible.)
January 17, 1996: Bayou filed a motion for new trial.
March 8, 1996: Bayou filed an “Opposition to Defendant’s Motion to Withdraw Funds from the Registry of the Court,” which is in the record before us on appeal, although there is no written motion in the record.
April 8, 1996: Bayou’s motion for new trial was denied by Judge Janice Clark.
April 26, 1996: Bayou’s motion for devolutive appeal was filed and served on opposing counsel.
*1252 May 1, 1996: Judge Janice Clark signed an order for devolutive appeal of the January, 1996 judgment(s), with a return date of June 1,1996.
ASSIGNMENTS OF ERROR
On appeal in suit number 418,671, Bayou asserts that:
1. The trial court erred in finding that under La. R.S. 22:762 the Commissioner had the authority to void Bayou’s lien, thereby depriving Bayou of its lien rights and its ability to collect from the proceeds of the sale of the property in question.
2. The trial court erred in its judgment of January 16, 1996 ... in releasing to the Commissioner monies in the registry of the court before ruling on Bayou’s motion for new trial and before the expiration of the period for the filing of suspensive appeals.
^INSURANCE COMPANY INSOLVENCY
In LeBlanc v. Bernard, 554 So.2d 1378, 1382 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1357 (La.1990), this court analyzed Louisiana’s regulatory scheme in LSA-R.S. 22:733 et seq., governing insolvent insurance companies as follows:
The Commissioner’s function as rehabili-tator or liquidator requires, initially, a determination of the assets and liabilities of the insurer. See LSA-R.S. 22:750 (requiring a report to the court reflecting assets and liabilities within a specified time period). The Commissioner’s title to property in this capacity is in the nature of a fiduciary holding those assets for the benefit of pai’ties in varied legal relationships to the insurer. See Couch, 2A Couch Cyclopedia of Insurance § 22:45 (Anderson 2d ed. 1984). ... The scheme for liquidation provides that the rights and liabilities of the insurer and its creditors (excepting contingent claims) sere fixed upon the entry of the liquidation order. LSA-R.S. 22:738. Thereafter, a time period is set within which claims must be presented. LSA-R.S. 22:748. The priority of claims, including claims by employees for compensation, claims evidenced by written instruments, contingent claims, and secured claims, is set forth by statute. LSA-R.S. 22:746 and 749. The scheme, similar to proceedings in bankruptcy, contemplates the conversion of non-liquid assets into liquid ones, and empowers the Commissioner to void transfers or encumbrances on these assets which frustrate this purpose. LSA-R.S. 22:745 (providing for voiding transfers or liens made within four months of the petition to show cause if a preference to a creditor or policyholder is granted thereby). The marshalling of assets and prioritizing of claims pursuant to this scheme is the exercise of the police power of the State of Louisiana. See Morris v. Jones, 329 U.S. 545, 552-557, 67 S.Ct. 451, 457, 91 L.Ed. 488 (1947).
An integral part of the scheme is distribution of the funds within a reasonable time period, the general rule being that policyholders and general creditors share ratably, and that in the absence of some statutory preference, no preference exists. Couch, supra, 22:79 and 84. LSA-R.S. 22:749(E) recognizes a preference insofar as secured creditors are secured to the extent of their security and become general creditors insofar as the balance (if there remains one). [Emphasis in original.]
The purpose of the regulatory scheme detailed above, including the Uniform Insurers Liquidation Act, codified in LSA-R.S. 22:758 through 22:763, is to prevent those creditors of the insolvent insurer who are better informed than other creditors from obtaining unfair preference and advantage to themselves by instituting attachment or similar proceedings against the property of the insolvent insurer. The Uniform Insurers Liquidation Act insulates the insurer from proceedings initiated before ancillary proceedings are commenced and allows less well-informed creditors to preserve and protect their claims. Equal treatment for all creditors is the lynchpin of the uniform law. See Reynolds v. National Society of Health, 595 So.2d 374 (La.App.2d Cir.1992), citing State v. Preferred Accident Insurance Co., 149 So.2d 632 (La.App. 1st Cir.1963).
However, in cases where the Uniform Insurers Liquidation Act does not apply, a seizure by a creditor prior to the *1253 appointment of a receiver confers upon the seizing creditor a lien which is preferred over the rights of the receiver as well as those of other creditors. State v. Preferred, Accident . Insurance Co., 149 So.2d. at 640. It is only where the statute applies that such a preference is specifically proscribed pursuant to LSA-R.S. 22:762. Id. The Louisiana Supreme Court has established the rule that when the Uniform Insurers Liquidation Act' is not applicable, deposits in the hands of the state treasurer (or Commissioner) are subject to attachment, garnishment or execution even if instituted during the period four months prior to commencement of delinquency proceedings. Id. at 641. In Martin v. General American Casualty Co., 226 La. 481, 76 So.2d 537 (1954), the court cited and quoted a very early case, In re Bryce Cash Store, Inc., 12 La.App. 365, 124 So. 544, 545, to describe the effect of a receivership, as follows:
The property of the debtor was attached before the receiver was appointed, and the privilege, when recognized by the court, dated back to the service of the writ. Now, was this seizure and the privilege conferred by it divested when the receiver ivas appointed and took over the property ? The answer is, “No.”
[[Image here]]
The appointment of a receiver sustains the status quo of the corporation, and is meant to preserve and not to cause injury either to the creditors or to the corporation. His taking over of the property brings about no change of title and cannot prejudice the rights of any creditor. He takes the property as he finds it, burdened with all the liens and privileges which affected it in the hands of the corporation, and to the same extent. ... The property was, at the time the receiver was appointed, in the custody of the sheriff, who had taken possession of it under the writ of attachment. Presumably he surrendered the property to the receiver. But such surrender did not “destroy the privilege resulting from the seizure.” [Citations omitted.]
ISSUE
The issue in the present litigation is whether the holder of a lien under the Private Works Act, on immovable property that was owned by an individual on the date work commenced, is barred from exercising its privilege because the Commissioner, as trustee for an insolvent insurer that held a superi- or mortgage on the property, became owner of the encumbered property prior to the date the lien was recorded?
IsThe Commissioner moved for and was granted a summary judgment, admitting the absence of disputed material facts. Thus, the validity of Bayou’s lien under the Private Works Act appears to be undisputed.[3]
STATUS OF THE PARTIES
Important facts to be gleaned from the previous chronological listing of events reveal the relationships of the various entities, both parties and non-parties, involved in this case. Bayou contracted with Ms. Matherne, the original owner of the property, and Ms. Matherne became Bayou’s debtor. ANA contracted with Ms. Matherne, and she became ANA’s debtor. At different points in time, both ANA and Bayou were creditors of the same debtor. Bayou was never a creditor of ANA. Notably, it was not Bayou’s debtor but ANA, with whom Bayou had no privity of contract, that became insolvent. The Commissioner became the holder of ANA’s mortgage prior to the commencement of the contract between Bayou and Ms. Matherne, thus making the Commission-' er a holder of a mortgage superior to the subsequent lien. After Bayou’s statutory lien rights arose on the Matherne property, the Commissioner elected to take a dation of the property instead of foreclosing on it by executory process. The Commissioner thus became owner of the property that was burdened with Bayou’s lien, which was unre *1254 corded at the time of the dation. As owner of the property, the Commissioner proceeded, in suit number 388,758, the liquidation proceeding, to have Bayou’s lien cancelled. Judgment of cancellation was rendered, which Bayou did not oppose, satisfied with being relegated to the proceeds of the anticipated sale and the security of the $30,000 placed in the registry of the court. Bayou never was, and still is not, a creditor of the insolvent insurer or the Commissioner. Bayou’s only rights vis a vis the Commissioner were as a holder of a property right, which was converted to a right to the proceeds of the sale of the property.
We will now examine the effect of the dation en paiement in the instant case. The Commissioner, as successor in interest to ANA, holder of the superior mortgage on Ms. Matherne’s property, accepted a dation which “satisfied” the mortgage by the transfer of ^ownership of the mortgaged property to the Commissioner. See Hibernia National Bank v. Continental Marble and Granite Company, Inc., 615 So.2d 1109 (La.App. 5th Cir.1993); Dixie Savings and Loan Association v. Bonura, 549 So.2d 424 (La.App. 5th Cir.1989). However, when a giving in payment is made, the property conveyed is burdened with any previously or subsequently recorded encumbrances. Quality Finance Co. of Donaldsonville, Inc. v. Bourque, 315 So.2d 656, 659 (La.1975). A creditor, such as Bayou, has a right to assume that his statutory right to a labor/materialman’s lien is protected by the procedures statutorily provided in his favor, and that, according to law, his lien rights date back to the date of commencement of work. See Tharpe and Brooks, Inc. v. Amott Corporation, 406 So.2d 1 (La.App. 1st Cir.1981), writ denied, 410 So.2d 1145 (La.1982). Hence, conventional satisfaction and cancellation of a mortgage by a giving in payment does not have the effect of voiding the obligations owed to other creditors with lien rights. Quality Finance, 315 So.2d at 659. The Commissioner could have procured cancellation of the inferior liens by instituting an executory proceeding, whereby the purchaser at a foreclosure sale by the sheriff is liable for nothing beyond the purchase price. The property is released from all inferior mortgages, liens and privileges as well as from the mortgage of the seizing creditor, even though the purchase price does not satisfy all claims. Id. However, when the property is conveyed by a dation en paiement instead of a foreclosure sale, the inferior creditor is deprived of the right to buy the property in at sheriffs sale if he was so inclined. Id. at 660. Thus, the rule is that the inferior encumbrance follows the property into the hands of the new owner created by the dation.
In the instant case, the fact that the property was eventually sold for much less than ANA’s original mortgage is immaterial. Bayou owned a real right in the Matherne property by virtue of its privilege under the Private Works Act, which privilege attached when the work began. Bayou’s real right could be extinguished only in a manner prescribed by law; absent either a judicial sale or the consent of Bayou, its encumbrance remained against the property in the hands of the Commissioner. See the discussion of Quality Finance[4] in “Work |8of Appellate Courts,” 37 LLR 383 (1975-76). An important aspect of the instant case, as in Quality, was that the privileged creditor (Bayou) and the taker in the dation (the Commissioner in the instant case or the superior mortgagee in Quality) were co-creditors of the original owner.
*1255 Next we consider the respective rights of the Commissioner and Bayou to the Matherne property and then to the proceeds of the sale.[5] We have already mentioned that the Commissioner and Bayou were co-creditors of Ms. Matherne. Thus, the Commissioner is a third party to any exercise of Bayou’s lien rights. As a third party, the Commissioner was entitled to a notice of lis pendens within a year of the filing of Bayou’s lien. See LSA-R.S. 9:4833; Triangle Pacific Corp. v. National Building & Contracting Co., Inc., 94-0619, 94-0620 (La.App. 1st Cir. 3/3/95); 652 So.2d 552. However, instead of filing a notice of lis pendens, Bayou filed suit number 418,671, naming the Commissioner as defendant. A party to a lien enforcement action cannot rely on the defense of the absence of a notice of lis pendens in the public records because such a party is in no sense a third party relying on the public records. C & J Contractors v. American Bank & Trust Co., 559 So.2d 810 (La.App. 1st Cir.), writs denied, 564 So.2d 318, 332 (La.1990).[6]
However, the crux of the Commissioner’s argument is not the untimeliness of Bayou’s lien enforcement action but the alleged proscription of the action by the Uniform Insurers Liquidation Act, specifically, LSA-R.S. 22:762, which provides:
During the pendency of delinquency proceedings in this or any reciprocal state no action or proceeding in the nature of an attachment, garnishment, or execution shall be commenced or maintained in the courts of this state against the delinquent insurer or its assets. Any lien obtained by any such action or proceeding within four months prior to the commencement of any such delinquency proceeding or at any time thereafter shall be void as against any rights arising in such delinquency proceeding.
|9The Commissioner argues, “Section 762 ... expressly prohibits the lawsuit filed by Bayou to maintain its statutory lien against the property of the estate. An unperfected statutory lien simply cannot be preserved in liquidation proceedings.” The Commissioner states it is entirely irrelevant that Bayou’s lien first attached when work commenced at the site in November 1993. What this argument overlooks is the fact that in November 1993, the immovable property to which the lien attached was owned by Ms. Matherne, not the Commissioner. The only “property of the estate” at that time was ANA’s superi- or mortgage. The Commissioner could not, without the consent of Bayou, destroy Bayou’s statutory rights by agreeing to exchange its mortgage for ownership of the property. Furthermore, $30,000 of the proceeds' of the sale of the property collected after Bayou’s lien was cancelled in suit number 388,758 never became “property in the estate” of the insolvent insurer because it was set aside by court order in the registry of the court.
The case of Reynolds v. National Society of Health, 595 So.2d 374 (La.App. 2d Cir.1992), which is relied on by the Commissioner, is distinguishable. In that case an insured obtained a judgment against a health insurer and petitioned for garnishment of the insurer’s property under the control of the Commissioner. In the instant case, the Commissioner states the action in Reynolds is analogous to Bayou’s attempt to perfect its lien against ANA’s estate by filing suit against the Commissioner. We disagree. The Second Circuit Court of Appeal’s holding that any lien obtained by the insured in its garnishment proceeding was rendered void by the Commissioner’s institution of liquidation proceedings was consistent with the language of Section 762. However, we cannot agree with the Commissioner that Section 762 applies to every lien; it does not *1256 apply to Bayou’s lien because Bayou’s lien was never against the property of ANA, which was a mortgage. To interpret Section 762 to extend to the facts of the instant case would lead to absurd results. The Commissioner could avoid numerous encumbrances by taking immovable property in dation and then using the Uniform Insurers Liquidation Act as a shield to his invalidation of valuable statutory rights of others, who where not creditors of the insolvent insurer, to the advantage of creditors of the insolvent insurer.
lioNor are we persuaded that the other sections of the Insurance Code cited by the Commissioner support his argument that Bayou’s entitlement to the proceeds of the sale of the property set aside by the court in suit number 388,758 is barred by those statutes. The Commissioner argues, “On the date of the Order of Liquidation, the Commissioner succeeded to a security interest which primed any lien in favor of Bayou. The Commissioner then liquidated the estate pursuant to the Insurance Code in an expeditious and cost effective manner. Bayou simply cannot use general civil law considerations which directly contradict the Insurance Code and improve its position which was fixed on the date of liquidation.” We assume the Commissioner is referring to LSA-R.S. 22:738(A) which provides, in pertinent part:
The rights and liabilities of the insurer and of its creditors, except those holding contingent claims, and of its policyholders, stockholders, or members and of all other persons interested in its assets shall, unless otherwise ordered by the court, be fixed as of the date of the entry of the order directing liquidation. The rights of claimants holding contingent claims on said date shall be determined as hereinafter provided.
Again, the fallacy in the Commissioner’s argument is that Bayou was never a creditor of ANA and is still not a creditor of the Commissioner. Bayou’s rights were not fixed on the date of ANA’s liquidation. Accordingly, the Louisiana Insurance Code simply does not apply to bar Bayou’s claim to the set aside proceeds. The general civil law considerations relied upon by Bayou do not contradict the Insurance Code. Although the Commissioner, acting in his capacity as trustee for the insolvent ANA, has broad powers under the Insurance Code, such as avoiding transfers or liens upon the property of an insurer, not all general civil laws are superseded by the code. See Republic of Texas Savings Association v. First Republic Life Insurance Co., 417 So.2d 1251 (La.App. 1st Cir.), writ denied, 422 So.2d 161 (La.1982), wherein the rights of a holder in due course were recognized despite the special powers of the Commissioner. This court has explained more than once that Louisiana has enacted a statutory scheme specifically designed for insurance company insolvencies, which scheme takes precedence over general law, but only to the extent that the general law is inconsistent with the provisions or purpose of the comprehensive, statutory scheme. See Bernard v. Fireside Commercial Life Insurance Co., 633 So.2d 177 (La.App. 1st Cir.1993), ┴11writ denied, 634 So.2d 839 (La.1994), citing Green v. Louisiana Underwriters Ins. Co., 571 So.2d 610, 615-616 (La.1990), and Crist v. Benton Casing Service, 572 So.2d 99, 102 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1143 (La.1991).
DISPOSITION
Accordingly, we find that the trial court erred in concluding that the Commissioner was entitled to judgment as a matter of law on the ground that the Insurance Code barred Bayou’s suit to collect the claim originally secured by a Private Works Act lien, and we will reverse that portion of the judgment rendered in suit number 418,671.
However, the judgment rendered by Judge Janice Clark also ordered the $30,000 deposited into the registry of the court to be released to the Commissioner. We find that the court lacked jurisdiction over the deposit because the deposit was made in suit number 388,758. The suits were never consolidated. That portion of the judgment rendered in suit number 418,671 ordering release of the funds to the Commissioner is void, and we vacate that portion of the judgment.
We remand this case for further proceedings consistent with this opinion, including a determination of whether the debt owed to *1257 Bayou equals or exceeds the $30,000 set aside and whether the Commissioner prematurely executed on the judgment in suit number 418,671 by withdrawing the deposit made in suit number 388,758 prior to the time when the judgment in suit number 418,671 became executory.[7]
The appellee is east for costs of this appeal in the amount of $397.36.
JUDGMENT REVERSED IN PART AND REMANDED WITH ORDERS; JUDGMENT VACATED IN PART.

. Although the judgment is not in the record of this appeal, the parties do not dispute its contents.

. Although Bayou’s entitlement to a lien apparently is not contested, it appears from the record that the amount of the debt to Bayou has not been litigated. The judgment of September 15, 1994, in suit number 388,758 left open the amount of the lien. Because summary judgment was granted dismissing Bayou’s claim in suit number 418,671, no proof was heard on the issue of the amount of Bayou’s claim.

. Quality Finance was distinguished in Haeuser Ins. Agency, Inc. v. Campo, 606 So.2d 582 (La.App. 5th Cir.), writ denied, 609 So.2d 257 (La.1992), with the court noting that the effect of the dation in the earlier case was no different from an ordinary sale, but was different when the property involved was included in a bankruptcy estate. In Haeuser, the court held that a judicial mortgagee no longer possessed a security interest in the property because at the time of the debt- or's filing his bankruptcy petition, the debtor had no equity above the outstanding priming liens; the fact that the transfer was made by dation en paiement instead of by foreclosure was irrelevant. The rule in Louisiana is that under LSA-R.S. 9:5166, a creditor of the bankrupt possesses a secured interest only if it can be shown that, at time of adjudication, there was equity in the property over and above the outstanding priming liens. Losavio v. Gauthier, 412 So.2d 1306 (La.1982).

. The parties do not dispute that after the Commissioner became owner of the property and after the judgment dissolving Bayou’s lien, the Commissioner proceeded to sell the property to a third party. When a sale of the property in question is consummated, the secured creditor's rights become attached to the proceeds of the sale instead of the property. Cooley v. Merriman, 590 So.2d 718 (La.App. 3d Cir.1991).

. Because of the jurisprudence cited, it is unnecessary for us to discuss whether the Commissioner waived the notice requirements of the Private Works Act by instituting a proceeding in the liquidation action to remove the lien. The jurisprudence also explains Bayou's reason for bringing a separate suit to name the Commissioner as a party defendant.

. The record before us does not contain filings from suit number 388,758, and even if it did, we would be unable to consider them for lack of jurisdiction over that judgment which was not appealed and is therefore final.