417 So.2d 1251 (1982)
REPUBLIC OF TEXAS SAVINGS ASSOCIATION
v.
FIRST REPUBLIC LIFE INSURANCE COMPANY.
No. 14892.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
Amended on Denial of Rehearing August 24, 1982.
*1252 G. T. Owen, III, Judith Atkinson Chevalier, Baton Rouge, Charles Moore, James McGraw, Houston, Tex., for plaintiff-appellant Republic of Texas Sav. Ass'n.
Donn Moss, Baton Rouge, for defendant-appellee Sherman A. Bernard, Com'r of Ins., State of La., Receiver for First Republic Life Ins. Co.
Jay M. Vogelson, Dallas, Tex., for defendant-appellee First Republic Life Ins. Co.
Before ELLIS, PONDER and SAVOIE, JJ.
PONDER, Judge.
This is an executory proceeding seeking to foreclose on a mortgage, to which the rehabilitator for a life insurance company has objected. Plaintiff has appealed from the judgment denying the petition for executory process and granting a permanent injunction.
First Republic Life Insurance Company, formed in March, 1976, became the owner of the NALICO Building in Baton Rouge in September, 1976, and of Fidelity Mortgage Company of Jackson, Mississippi, in October, 1976.
To help raise money for the purchase of another insurance company, First Republic executed a collateral note and mortgage for $1,250,000.00 on the NALICO Building. On December 3, 1976, First Republic issued a hand note for $900,000.00 to Fidelity Mortgage and pledged the collateral note as security. In turn Fidelity Mortgage borrowed $1,800,000.00 from the First National Bank of Jackson and assigned the collateral note as part of the security.
*1253 In January, 1977, Fidelity Mortgage and Republic of Texas Savings and Loan Association, organized in Texas, with Port Arthur as its home office, executed a loan participation agreement under which ROTSA would purchase portions of loans made by Fidelity Mortgage. Thereafter, ROTSA paid for several loans among them one on the NALICO Building under the following circumstances.
On January 28, 1977, First Republic issued another hand note in the amount of $900,000.00 payable to Fidelity Mortgage. ROTSA paid $810,000.00 for a 90% participating interest. Evidently, First Republic intended to pay a substantial amount to First National Bank of Jackson and get the collateral note on the NALICO Building loan reassigned to Fidelity Mortgage, whereupon ROTSA would have an interest in the then unencumbered mortgage. However, First National refused to give a partial release.
While there is suggestion that ROTSA may have informally learned of the situation, which we find not sufficiently proved, it was not until April 20, 1977 that Fidelity Mortgage formally informed ROTSA that the $1,250,000 collateral mortgage had not been released by First National Bank of Jackson. There was a flurry of activity, since the transactions were violations of Federal requirements, State requirements and the loan participation agreement. This activity culminated in the purchase by ROTSA of the loan made by First National Bank to Fidelity Mortgage and the assignment of the security to ROTSA. Only thereafter, however, did ROTSA learn that the hand note delivered to it by the bank was not the one in which it had purchased a participation and that the latter was also not in Fidelity Mortgage's possession in Jackson. Mr. Jordan, for ROTSA, was given what purported to be a copy. He then went to New Orleans to make claim against the title policy issued in connection with the loan. He learned of further difficulties but received a telephone call to the effect that the January 28, 1977, hand note was at the office of First Republic in Baton Rouge. When he arrived there, he was given a $900,000 note, purported to be the original January 28 note, in exchange for the December 3 note received by Jordan from the First National Bank. ROTSA also secured the remaining 10% of the loan, making it the sole owner of the mortgage.
Monthly payments were made first by First Republic and then by the rehabilitator after First Republic was placed in rehabilitation. However, payments were halted after the August, 1978, installment. Fidelity Mortgage went into bankruptcy.
ROTSA filed a petition for executory process. The rehabilitator opposed and sought an injunction on the basis that the hand note to Fidelity Mortgage was without consideration, that the hand note ultimately obtained by ROTSA was a backdated one, given without corporate authority and in violation of a court injunction, and that ROTSA did not receive the note in good faith and without notice of defense.
The trial court held that First Republic had received consideration but that ROTSA was not a holder in due course without notice of defenses because it received a backdated hand note under circumstances that would put a reasonable man on notice; and that the hand note was issued without corporate authority and in violation of a court order.
Appellant asserts fifteen specifications of error, which, however, may be grouped as follows:
1. The court failed to apply estoppel and equitable relief;
2. The court used the reasonable man test in determining holder in due course status;
3. The court found that ROTSA was not a holder in due course; and
4. The court found that the defenses of lack of corporate authority and the barring of the backdated note were available to the rehabilitator.
ROTSA argues that the court's failure to apply the doctrines of estoppel and equitable relief allows First Republic to benefit from its own misrepresentations. Although *1254 we might agree that those theories may apply to First Republic, the defendant in this case is actually the Commissioner of Insurance, in his position as rehabilitator.
The rehabilitator is vested with title to all property, contracts and rights of action of the insurer as of the date of the order directing rehabilitation. La.R.S. 22:735.[1] He has the responsibility of protecting the interests of the policyholders, creditors and the insurer; he has the authority to void transfers or liens upon the property of the insurer which any creditor, stockholder or member of the insurer might have avoided. La.R.S. 22:736 and 745(D).[2] These powers and responsibilities indicate that the rehabilitator does not stand precisely in the shoes of First Republic. While a party to the instrument may be estopped from asserting defenses based on previous misrepresentations, this restriction does not extend to the rehabilitator.
ROTSA next argues that the trial court erred in applying a "reasonable man test" to determine good faith and notice of defenses for holder in due course status, relying on Commercial National Bank in Shreveport v. Calk, 207 So.2d 578 (3rd Cir. 1968), which stated that notice of facts barring holder in due course status could be presumed from circumstances if they would necessarily put a reasonable person on inquiry to ascertain the true facts, but held that a few prior sales of defective merchandise *1255 were insufficient to put a bank, furnishing financing for the dealer of the merchandise, on notice that the merchandise was defective.
Calk interpreted provisions of the Negotiable Instruments Law (NIL). Other cases interpreting the NIL held that actual knowledge of a defect was necessary to preclude holder-in-due-course status. White System of New Orleans, Inc. v. Hall, 219 La. 440, 53 So.2d 227 (La.1951); Ford Motor Credit Company v. T. S. Williams, 225 So.2d 717 (1st Cir. 1969).
The NIL has been partially replaced by the provisions of the Uniform Commercial Code adopted by Louisiana and we have had no cases on this point. However, other jurisdictions have interpreted the UCC to say that mere negligence or failure to make inquiries which a reasonable man would make, does not amount to bad faith so long as the party does not refuse to inquire in order to remain ignorant of facts which he fears would disclose a defect in the transaction. Community Bank v. Ell, 278 Or. 417, 564 P.2d 685 (1977). Though a holder may have been negligent in taking the paper and omitted precautions which a prudent man would take, unless he has acted male fide, his title will prevail. Third National Bank in Nashville v. Hardi-Gardens Supply of Illinois, Inc., 380 F.Supp. 930 (M.D.Tenn. 1974); McConnico v. Third National Bank in Nashville, 499 S.W.2d 874 (Tenn.1973).
We believe our statutory provisions lead to the same conclusions. The current UCC provisions are more specific in the requirements of holder in due course status than the former NIL. A holder in due course must take possession of a note in good faith, for value, and without notice of any defense or claim to it on the part of any person. La.R.S. 10:3-302. A purchaser has notice of a claim or defense if he has notice that the obligation of any party is voidable in whole or in part. La.R.S. 10:3-304(1)(b). Notice of a fact is defined as actual knowledge, receipt of notice or notification of the fact, or from all facts and circumstances known to a person at the time in question, he has reason to know that the fact exists. La.R.S. 10:1-201. A person knows or has knowledge of a fact when he has actual knowledge of it. La.R.S. 10:1-201.
Good faith is defined as honesty in fact in the conduct or transaction concerned. La.R.S. 10:1-201. It requires a subjective inquiry into ROTSA's actions.
The "reasonable man test" is not the standard to be applied in determining notice of a defense or good faith. Both determinations require a more subjective test, with the determination of good faith being totally subjective. Corporacion Venezolana de Fomento v. Vintero Sales, 452 F.Supp. 1108 (S.D., N.Y.1978). The "reason to know" portion of the notice requirement guards against an intentional or wilful ignorance.
The next inquiry is whether ROTSA was a holder in due course. Although it is clear that ROTSA did not understand the workings of a Louisiana collateral mortgage, we do not find evidence to support a finding that ROTSA did not act "honestly in fact." The good faith requirement is satisfied.
The final requirement is that ROTSA took the note without notice that it was overdue, dishonored or of any defense against it. Even if it be accepted that ROTSA was actually suing on an antedated note issued in May, and that ROTSA knew that it did not intially have a first lien position, and that the original January 28, 1977, note was not in the collateral mortgage file acquired from First National, the question to be answered is: do these facts give ROTSA reason to know that a defense existed.
The defenses found by the trial judge were lack of corporate authority because the resolution passed gave authority only for the January 28, 1977 note and that there could be no corporate authority for the May note due to the injunction issued when the company was placed in rehabilitation.
A corporate resolution was passed on January 27, 1977 authorizing the execution of a $900,000.00 note secured by the collateral *1256 mortgage on the NALICO Building. No date was given for the execution and the resolution gave the power to sign and execute any and all documents necessary to effect the execution of the note and carry out the purposes of the resolution.
In May of 1977, the secretary of First Republic signed and dated a copy of the January resolution, certifying that the resolution was in full force and that the officers had full power to execute the note. The facts indicate that the authority used to issue the note, was that given by the January resolution.
The facts known to ROTSA in May of 1977 did not put them on notice that there may be a defense of lack of corporate authority. Statutorily, the fact that a note is antedated is not sufficient to put the purchaser on notice of a defense. La.R.S. 10:3-304(4)(a).
La.R.S. 22:745(D) gives the rehabilitator the power to avoid any transfer or lien upon the property of an insurer which any creditor, stockholder or member of such insurer might have avoided unless the person to whom it was transferred was a bona fide holder for value prior to the date of the entry of the order for liquidation. While there is some suggestion that ROTSA knew of the injunction we find that far from proved. Since ROTSA did not have notice of the injunction or knowledge of facts giving them reason to know that the injunction had been issued, they were not on notice of any possible infirmity and were holders in due course.
The court has the power to undo or destroy actions done in violation of an injunction. La.C.C.P.Art. 3611.[3] However, those actions are not absolute nullities under La.R.S. 10:3-305(2)(b).[4]
The injunction issued in the conservation proceedings later converted into rehabilitation proceedings, was against "alienating, selling, mortgaging and/or otherwise dispensing of its assets." Even assuming that the note given in May was a backdated one, it was given in lieu of one that was executed in January. The first indebtedness to Fidelity Mortgage was created in December, the collateral note and mortgage had been executed at that time, the second indebtedness to Fidelity Mortgage was created and ninety per cent thereof assigned to ROTSA in January. There was no alienation, selling, mortgaging and/or otherwise disposing of assets in the execution of the backdated note, if in fact there was a backdating.[5]
For these reasons, we find that the judgment of the trial court should be reversed. ROTSA's petition for executory process is granted and the rehabilitator's petition for injunction is denied.
REVERSED.
NOTES
[1] La.R.S. 22:735:

"On the return of such order to show cause and after a full hearing, which shall be held by the court without delay, the court shall enter an order either dismissing the petition or finding that sufficient cause exists for rehabilitation or liquidation and directing the commissioner of insurance to take possession of the property, business and affairs of such insurer and to rehabilitate or liquidate the same as the case may be. The commissioner of insurance shall be responsible on his official bond for all assets coming into his possession. The commissioner of insurance and his successor and successors in office shall be vested by operation of law with the title to all property, contracts and rights of action of the insurer as of the date of the order directing rehabilitation or liquidation."
[2] La.R.S. 22:736 and 745(D):

"A. Upon the entry of an order directing rehabilitation, the commissioner of insurance shall immediately proceed to conduct the business of the insurer and take such steps towards removal of the causes and conditions which have made such proceedings necessary as may be expedient.
B. If at any time the commissioner of insurance shall find that it is to the best interests of policyholders, creditors and the insurer to effect a plan of mutualization or rehabilitation, he may submit such plan to the court for its approval. Such plan, in addition to any other terms and provisions as may, by the commissioner of insurance be deemed necessary or advisable, may include a provision imposing liens upon the net equities of policyholders of the insurer, and in the case of life insurers, a provision imposing a moratorium upon the loan or cash surrender values of the policies, for such period and to such an extent as may be necessary. Notice of the hearing upon any such plan shall be given in the manner as may be fixed by the court and upon such hearing the court may either approve or disapprove the plan or modify it in such manner and to such extent as to the court shall seem appropriate.
C. If at any time the commissioner of insurance shall find that further efforts to rehabilitate the insurer would be futile and would result in loss to the creditors, policyholders, stockholders or any other persons interested, he may apply to the court in the same proceeding for an order directing the liquidation of the property, business and affairs of such insurer.
D. If at any time the commission of insurance shall find that the causes and conditions which made such proceeding necessary have been removed he may petition the court for an order terminating the conduct of the business by said commissioner of insurance and permitting such insurer to resume possession of its property and the conduct of its business and for a full discharge of all liability and responsibility of such commissioner of insurance. No order for the return to such insurer of its property and business shall be granted unless the court after a full hearing shall determine that the purposes of the proceeding have been fully accomplished."
R.S. 22:745(D):
"D. The commissioner of insurance as rehabilitator, liquidator, or conservator may avoid any transfer of or lien upon the property of an insurer which any creditor, stockholder or member of such insurer might have avoided and may recover the property so transferred or its value from the person to whom it was transferred unless he was a bona fide holder for value prior to the date of the entry of the order of liquidation. Such property may be recovered or its value collected from whoever may have received it except a bona fide holder for value."
[3] C.C.P.Art. 3611:

"Disobedience of or resistance to a temporary restraining order or preliminary or final injunction is punishable as a contempt of court. The court may cause to be undone or destroyed whatever may be done in violation of an injunction, and the person aggrieved thereby may recover the damages sustained as a result of the violation."
[4] La.R.S. 10:3-305(2)(b):

"To the extent that a holder is a holder in due course he takes the instrument free from
* * * * * *
(2) all defenses of any party to the instrument with whom the holder has not dealt except
(b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation an absolute nullity; and
* * * *"
[5] There was some testimony that another note was executed just prior to the arrival of Jordan, ROTSA's agent, in Baton Rouge. This was denied by other testimony. The discrepancies between the purported copy and the one given to ROTSA as the purported original was explained by one witness: the purported copy was a copy of the first draft of the original before some amendments were made.

Because of our finding we need not consider appellants' questioning of the March injunction because of the court's holding of unconstitutionality in May.