504 So.2d 860 (1987)
Elouise Neilson ROBERTSON
v.
Geraldine Buoni, Wife of/and Joseph BUONI.
No. 86-C-2290.
Supreme Court of Louisiana.
April 6, 1987.
Jamie F. Veverica, Gretna, for applicant.
Philip J. Boudousque, Gretna, for respondents.
DIXON, Chief Justice.
This is a suit to dissolve a sale of immovable property. By act of sale and assumption dated April 7, 1982, Elouise N. Robertson sold Mr. and Mrs. Joseph Buoni a piece of real property identified as Lot 20, Section D, Elmwood Subdivision, now known as Northbrook Subdivision, in Jefferson Parish, Louisiana. At trial, Ms. Robertson testified that the Buonis agreed to assume the balance of the existing mortgage held by Jefferson Savings & Loan, pay an $8,000 deposit and execute a promissory note in Ms. Robertson's favor for $40,000 representing the balance of the purchase price. The note provided for the payment of $7,000 on or before July 7, 1982 and $6,000 each year thereafter payable on April 7th. Ms. Robertson did not receive any payment after the initial $8,000, and when she attempted to collect, she learned the Buonis had left the area. The property *861 at issue was no longer in her name on the public records, and the Buonis appeared as the record owners with only plaintiff's mortgage to Jefferson Savings & Loan Association encumbering the property. In an effort to avoid foreclosure because she had no funds with which to bid on the property, Ms. Robertson continued to make the mortgage payments. At the time judgment was rendered in the trial court, Ms. Robertson had paid taxes and mortgage installments for approximately three and one-half years after the sale.
Ms. Robertson sued, and an attorney was appointed as curator ad hoc for the absentee defendants. Attempts to locate the defendants were unsuccessful, and the matter proceeded to trial with Ms. Robertson as the lone witness. The promissory note, but not the act of sale, was introduced and admitted into evidence. The trial court declined to dissolve the sale, quoting at length from Waseco Chemical & Supply Co. v. Bayou State Oil Corp., 371 So.2d 305 (La.App. 2d Cir.1979), cert. denied 374 So.2d 656 (La.1979), a case concerning dissolution of a mineral lease, and concluding that Ms. Robertson failed to meet her burden of proof in not providing the court with sufficient information to determine whether dissolution was warranted under Waseco. The court of appeal affirmed with one dissent, 494 So.2d 563 (La. App. 5th Cir.1986), citing the devastating financial effect such a dissolution could have on an innocent third party purchaser. The dissenter objected to the court's speculation about the existence of a third party purchaser. He opined that Ms. Robertson should be entitled to relief under C.C. 2561 and C.C. 2562 which read as follows:
"If the buyer does not pay the price the seller may sue for the dissolution of the sale. This right of dissolution shall be an accessory of the credit representing the price, and if it be held by more than one person all must join in the demand for dissolution; but if any refuse, the others by paying the amount due the parties who refuse shall become subrogated to their rights." C.C. 2561.
"The dissolution of the sale of immovables is summarily awarded, when there is danger that the seller may lose the price and the thing itself.
If that danger does not exist, the judge may grant to the buyer a longer or shorter time, according to circumstances, provided such term exceed not six months.
This term being expired, without the buyer's yet having paid, the judge shall cancel the sale." C.C. 2562.
The Louisiana Civil Code provides several remedies for a vendor who has not received payment of the purchase price. Under C.C. 3249 and C.C. 3271, the vendor has a privilege on things sold for payment:
"Creditors who have a privilege on immovables, are:
1. The vendor on the estate by him sold, for the payment of the price or so much of it as is unpaid, whether it was sold on or without a credit.
2. Architects, undertakers, bricklayers, painters, master builders, contractors, subcontractors, journeymen, laborers, cartmen and other workmen employed in constructing, rebuilding or repairing houses, buildings, or making other works.
3. Those who have supplied the owner or other person employed by the owner, his agent or subcontractor, with materials of any kind for the construction or repair of an edifice or other work, when such materials have been used in the erection or repair of such houses or other works.
The above named parties shall have a lien and privilege upon the building, improvement or other work erected, and upon the lot of ground not exceeding one acre, upon which the building, improvement or other work shall be erected; provided, that such lot of ground belongs to the person having such building, improvement or other work erected; and if such building, improvement or other work is caused to be erected by a lessee of the lot of ground, in that case the privilege shall exist only against the lease and shall not affect the owner.
4. Those who have worked by the job in the manner directed by the law, or by the *862 regulations of the police, in making or repairing the levees, bridges, ditches and roads of a proprietor, on the land over which levees, bridges and roads have been made or repaired." C.C. 3249.
"The vendor of an immovable only preserves his privilege on the object, when he has caused to be duly recorded at the office for recording mortgages, his act of sale, in the manner directed hereafter, whatever may be the amount due to him on the sale." C.C. 3271.
Additionally, under C.C. 2561 and 2562, the unpaid vendor has the right to demand dissolution of sales by judicial process. This vendor's privilege and the right of dissolution are clearly distinguishable from and independent of each other. Sliman v. McBee, 311 So.2d 248 (La.1975); Stevenson v. Brown, 32 La.Ann. 461 (1880); United States v. Maniscalco, 523 F.Supp. 1338 (E.D.La.1981); Toler v. Toler, 337 So.2d 666 (La.App. 3d Cir.1976). Enforcement of the vendor's privilege is "an affirmation of the contract" whereas the exercise of the right of dissolution places "matters in the same state as though the obligation had not existed." Yiannopoulos, "Real Rights in Louisiana and Comparative Law: Part I," 23 La.L.Rev. 161, 230 quoting Heirs of Castle v. Floyd, 38 La.Ann. 583, 587 (1886) and Louis Werner Saw Mill Co. v. White, 205 La. 242, 252, 17 So.2d 264, 268 (1944). In the sale of immovables, the resolutory action of dissolution exists against the original purchaser and also third persons acquiring real rights or title to the property. 23 La.L.Rev. 161 at 232, fn. 334. See also United States v. Maniscalco, supra.
In Litvinoff, 7 Louisiana Civil Law Treatise, Book 2 at 508 (1975), the author cautions against casual dissolution of contracts, and states that the remedy of contract dissolution is not to be regarded as a convenient way for a party to unburden himself of the contract. The dissolution of the contract must be pronounced by the court, which must determine whether the rendering of only partial performance by the obligor, plus the delay attending a possible completion, or the failure to perform an accessory obligation, warrants dissolution. Litvinoff suggests several factors to be considered that were adopted by the Waseco court. These include the extent and gravity of the failure to perform alleged by the complaining party, the nature of the obligor's fault, the good or bad faith of the parties involved, and also the surrounding economic circumstances that may make the dissolution opportune or not. Litvinoff, supra at 509.
In Sliman v. McBee, supra, we addressed the issue of judicial dissolution of a contract of sale of an immovable. Among other pertinent facts and issues, in that case the agreed purchase price was $78,000, in part payment of which the purchaser paid $5,000, and executed four promissory notes for the remainder. There was no mortgage accompanying the sale. We applied C.C. 2045 which at that time read:
"The dissolving condition is that which, when accomplished, operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed.
It does not suspend the execution of the obligation; it only obliges the creditor to restore what he has received, in case the event provided for in the condition takes place."
(In the 1984 revisions of the articles on obligations, C.C. 2045 was incorporated into C.C. 1767). We also applied C.C. 2561 and held that the vendor was entitled to dissolution of the sale on account of the purchaser's default in full payment of the purchase price, and held the vendee to be entitled to restoration of any partial payment. See also Hollanger v. Hollanger Rice Farms, 445 So.2d 117 (La.App. 2d Cir.1984), cert. denied 449 So.2d 1028 (La.1984); Groner Apartments v. Controlled Building Systems, 432 So.2d 1142 (La.App. 3d Cir.1983), cert. denied 438 So.2d 1106 (La.1983).
Ms. Robertson had an action under C.C. 2561, C.C. 2562 and Louisiana jurisprudence to seek dissolution of the sale when full payment of the price was not made, in spite of the fact that she failed to obtain a mortgage. The remedy afforded by C.C. 2561 is in no way dependent upon the existence of a security device such as a *863 mortgage or a privilege. Sliman v. McBee, supra; Hollanger v. Hollanger Rice Farms, supra; Stevenson v. Brown, supra and Toler v. Toler, supra. Applying the Litvinoff suggested factors to the present case, it can be determined from Ms. Robertson's unrebutted testimony that the extent and gravity of the failure to perform is quite extreme. Failure to perform has caused Ms. Robertson to lose her property and her equity in such property, and to suffer substantial financial losses as she pays off the mortgage and taxes and legal fees for this action. Second, the nature of the obligor's faultfailure to paygoes to the very heart of the purpose of the contract. Third, the good or bad faith of the parties must be considered, and it is unrebutted that Ms. Robertson is in good faith. On the other hand, the Buonis have defaulted on their obligation and have left the area without notifying Ms. Robertson. Litvinoff states that a fraudulent intent on the part of the obligor is not necessary to produce dissolution. "Any failure to perform involving some fault on his part suffices for this purpose, ..." supra at 509-510. Leaving the area without notice or payment to Ms. Robertson constitutes more than "some fault." No economic circumstances have been shown in this case that would make dissolution inopportune. Conversely, the facts that the Buonis have not made any mortgage payments or paid any taxes on the house for the last three and one-half years when the house is in their name, and that Ms. Robertson has assumed these responsibilities, show economic circumstances that would make dissolution quite opportune. From the evidence presented, judicial dissolution of the sale is a warranted and just remedy.
The court of appeal's speculation of the presence of a third party purchaser of the property is reasonable, but is not a valid cause for denial of the remedy of dissolution of a sale of immovables. The right to dissolution of a sale of an immovable for nonpayment is not contingent on the absence of a third party purchaser. A vendor seeking dissolution of the sale may do so even after the property has left the hands of the original purchaser. Stevenson v. Brown, supra; 23 La.L.Rev., supra at 232 and cases cited therein.
C.C. 2562 provides that if there is no danger that the seller may lose the price and the thing itself, the judge may grant to the buyer up to six months to perform and make payment. Here, however, defendants' disappearance and lengthy absence would not justify further delay.
For these reasons the judgments of the courts below are reversed, and there is now judgment in favor of Elouise Neilson Robertson and against Joseph and Geraldine Buoni decreeing the sale of April 7, 1982 from Ms. Robertson to Mr. and Mrs. Buoni dissolved and of no effect, at the cost of defendants.
DENNIS and COLE, JJ., concur.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
I do not necessarily agree with the broad proposition that a seller's right to dissolve the sale for non-payment of the purchase price under La.C.Cr.P. art. 2561 always exists against a third person who has subsequently acquired ownership. When a sale of immovable property has been recorded, the seller's right to dissolution, as against a subsequent purchaser, may depend on whether the recorded original sale indicates that the price has or has not been paid.[1] A. Yiannopoulos, 2 Louisiana Civil Law TreatiseProperty § 165 (2d ed. 1980).
Since the record in the present case does not contain the original sale, plaintiff arguably has not proved her right of dissolution as against a subsequent purchaser. However, the present litigation is solely between the original seller and the original *864 purchasers, and plaintiff-seller is entitled to a judgment of dissolution as against these defendants.
NOTES
[1] A subsequent purchaser should be protected against a claim for dissolution of a recorded sale unless the records indicate that the price was not paid. Yiannopoulos, supra. If the records so indicate, the subsequent purchaser who examined the title should have been aware that his acquisition was subject to a potential claim for dissolution based on the resolutory condition implied by law in the original sale.