554 So.2d 1378 (1989)
Paul J. LeBLANC, Jr.
v.
Sherman A. BERNARD, etc.
No. 88 CA 1179.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
*1379 Lawrence A. Durant, Baton Rouge, for plaintiff-appellee Paul J. LeBlanc, Jr.
Don Moss, Baton Rouge, for defendant-appellant Sherman A. Bernard, et al.
Before COVINGTON, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
Paul J. LeBlanc, Jr. (plaintiff) filed this suit against Sherman A. Bernard (defendant) in his capacity as the rehabilitator of First Republic Life Insurance Company (First Republic) and liquidator of Commonwealth Securities Corporation (Commonwealth).[1]
Plaintiff seeks dissolution for nonpayment of the purchase price of a cash sale (reciting payment of $437,400.00, the purchase price in full) of certain immovable property pursuant to an option agreement acquired by Roger J. LeBlanc[2] owner of 100 percent of the shares of Commonwealth (to whom the disputed property was immediately transferred upon the conclusion of the sale) and 99.95 percent owner of First Republic (to whom the property was transferred by defendant pursuant to an order of liquidation transferring all assets of Commonwealth, in liquidation, to First Republic, in rehabilitation). By an act of sale between defendant, on behalf and as rehabilitator of First Republic, and National American Life Insurance Company, dated June 2, 1982, the property was transferred *1380 again; however, a notice of lis pendens regarding plaintiff's claim for dissolution was filed in the public records prior thereto, on April 12, 1979. Additionally, the act of sale recites that National American Life Insurance Company "is aware and takes cognizance of litigation involving above described property bearing suit No. 223,278, 19th Judicial District Court, East Baton Rouge Parish, Louisiana."
The trial court determined that none of the purchase price was ever paid (a fact not controverted at trial) and ordered dissolution of the sale from plaintiff to LeBlanc, citing Sliman v. McBee, 311 So.2d 248 (La. 1975). Defendant appeals, asserting error in the trial court's refusal to apply the public records doctrine, more specifically LSA-R.S. 9:2721, so as to preclude plaintiff's claim,[3] and error in ordering "revindication." Defendant argues, in essence, that he, as rehabilitator and liquidator, is a "third party" within the meaning of LSA-R.S. 9:2722.[4] LSA-R.S. 9:2722 defines the scope of the terms "third persons or third parties" used in LSA-R.S. 9:2721, thereby limiting the protection of the latter to only those within the definition of the former.
Plaintiff asserts (1) that dissolution is available in these circumstances irrespective of the existence of a third party, citing McBee, 311 So.2d 248, and (2) that defendant is not a third party. The trial court's oral reasons for judgment cite McBee, 311 So.2d 248, and include the statement: "the mere fact that the property passed through the hands of the [Insurance Commissioner]... does not purify these transactions."
McBee involved an act of sale reflecting a credit sale by language in the document that the promissory notes executed in conjunction therewith were to be "the personal obligation" of the vendees. McBee, 311 So.2d at 250. There was no recorded mortgage. The court held that the vendor's lien (which was specifically waived in the act of sale) was distinct from the right of dissolution for nonpayment and, therefore, the latter was not included in the waiver, granting dissolution notwithstanding the existence of a third party. McBee, 311 So.2d at 256.
Robertson v. Buoni, 504 So.2d 860 (La. 1987), citing McBee, granted dissolution where the public records reflected the vendor's pre-existing mortgage (which was assumed by the vendees in the act of sale) but also reflected vendees as owners of the property.[5]Buoni, 504 So.2d at 861. The vendor in Buoni did not record a mortgage in her favor. There was no evidence of a third party although the court of appeal assumed that one existed and denied dissolution. Robertson v. Buoni, 494 So.2d 563, 564 (La.App. 5th Cir.1986). The supreme court reversed, stating:
The court of appeal's speculation of the presence of a third party purchaser of the property is reasonable, but is not a valid cause for denial of the remedy of dissolution of a sale of immovables. The right to dissolution of a sale of an immovable for nonpayment is not contingent on the absence of a third party purchaser. A vendor seeking dissolution of the sale may do so even after the property has left the hands of the original purchaser.
(Citations omitted.) Buoni, 504 So.2d at 863. Justice Lemmon concurred, reasoning *1381 that a vendor's right to dissolution when there exists a third party depends upon whether the public record reflects that dissolution could occur (i.e., that the purchase price had not been fully paid), citing A. Yiannopoulos, Property § 165 (2 Louisiana Civil Law Treatise (1980)). Buoni, 504 So.2d at 863 (Lemmon, J., concurring).
The right to dissolution is the result of a resolutory condition implicit in all commutative contracts, which effects revocation of the obligation and a return to the pre-existing status quo. LSA-C.C. art. 2045 and 2046.[6] There is no specific requirement in the Civil Code that an act of sale be recorded to preserve the right of dissolution. A. Yiannopoulos, supra, at § 165; see also Yiannopoulos, Real Rights in Louisiana, 23 La.L.Rev. 161, 232 (1963). Professor Yiannopoulos suggests the right of dissolution where the act of sale is not recorded is wholly consistent with the public records doctrine, LSA-R.S. 9:2721-24, because the vendor is record owner and a third person purchasing from the vendee acquires a title that is "utterly null and void, except between the parties thereto." A. Yiannopoulos, supra, at § 165 (citing LSA-C.C. art. 2266); see also Yiannopoulos, Real Rights in Louisiana, supra, at 233. The operation of the right of dissolution against a third party becomes inconsistent with the public records doctrine when, as here, the public records reflect that the price has been paid. Id.; Buoni, 504 So.2d at 863 (Lemmon, J., concurring). The majority opinion in Buoni can be distinguished from our facts because there the public records reflected a mortgage in vendor's name and the property in vendees' names, and, most importantly, there was no evidence of an affirmative statement that the entirety of the purchase price had been paid.[7] For these reasons we hold that the right of dissolution cannot lie in this case if defendant can rely on the public records. See LSA-R.S. 9:2722.
The Commissioner of Insurance of Louisiana as rehabilitator or liquidator is vested with title to "all property, contracts and rights of action of the insurer as of the date of the order directing rehabilitation or liquidation." LSA-R.S. 22:735. He acts in the capacity of an officer of the State of Louisiana, State v. Preferred Accident Insurance Co., 238 La. 372, 115 So.2d 384 (1959), and is responsible on his official bond for all assets that come into his possession. LSA-R.S. 22:735. Whether the Commissioner can rely on the public records in marshalling these assets is a question of first impression in this state, and our research discloses no caselaw on point elsewhere.
The trial court placed defendant in the exact shoes of First Republic.[8] He erred here as a matter of law. The Commissioner of Insurance as rehabilitator or liquidator owes an overriding duty to the people of the State of Louisiana. The raison d'etre of his office is because the insurance industry is "affected with the public interest." LSA-R.S. 22:2. Any duties imposed upon that office, therefore, must be performed with the public interest foremost in mind. The Commissioner's responsibilities as rehabilitator or liquidator include, additionally, protection of the policyholders, creditors, and the insurer itself. Republic of Texas Savings Association v. First Republic Life Insurance Co., 417 So.2d 1251, 1254 (La.App. 1st Cir.), writ denied, 422 So.2d 161 (La.1982). This court has previously held that defendant, as rehabilitator, "does not stand precisely in the shoes of First Republic." Id.
Republic of Texas involved defendant in his capacity as rehabilitator of First Republic, *1382 and an executory proceeding brought by Republic of Texas Savings Association (Republic of Texas) to foreclose on a collateral mortgage. A series of financing arrangements resulted in Republic of Texas becoming the holder of a hand note that did not correspond to the collateral package in which it had purchased a participation. Republic of Texas exchanged its note for a note First Republic represented to have been the original note but what appears to have been a back-dated instrument. In attempting to enforce the note against First Republic (by that time in rehabilitation), Republic of Texas asserted that the rehabilitator should be estopped from asserting certain defenses because those defenses would allow First Republic to "benefit from its own misrepresentations." Republic of Texas, 417 So.2d at 1253. In that context we held: "While a party to the instrument may be estopped from asserting defenses based on previous misrepresentations, this restriction does not extend to the rehabilitator." Id. at 1254.
The Commissioner's function as rehabilitator or liquidator requires, initially, a determination of the assets and liabilities of the insurer. See LSA-R.S. 22:750 (requiring a report to the court reflecting assets and liabilities within a specified time period). The Commissioner's title to property in this capacity is in the nature of a fiduciary holding those assets for the benefit of parties in varied legal relationship to the insurer. See Couch, 2A Couch Cyclopedia of Insurance § 22:45 (Anderson 2d ed. 1984). The Commissioner is authorized, subject to court approval, to borrow funds against the assets. LSA-R.S. 22:740 (allowing the securing of repayment by "mortgage, pledge, assignment, transfer in trust or hypothecation ...)." The scheme for liquidation provides that the rights and liabilities of the insurer and its creditors (excepting contingent claims) are fixed upon the entry of the liquidation order. LSA-R.S. 22:738. Thereafter, a time period is set within which claims must be presented. LSA-R.S. 22:748. The priority of claims, including claims by employees for compensation, claims evidenced by written instruments, contingent claims, and secured claims, is set forth by statute. LSA-R.S. 22:746 and 749. The scheme, similar to proceedings in bankruptcy, contemplates the conversion of non-liquid assets into liquid ones, and empowers the Commissioner to void transfers or encumbrances on these assets which frustrate this purpose. LSA-R.S. 22:745 (providing for voiding transfers or liens made within four months of the petition to show cause if a preference to a creditor or policyholder is granted thereby). The marshalling of assets and prioritizing of claims pursuant to this scheme is the exercise of the police power of the State of Louisiana. See Morris v. Jones, 329 U.S. 545, 67 S.Ct. 451, 457, 91 L.Ed. 488 (1947).
An integral part of the scheme is distribution of the funds within a reasonable time period, the general rule being that policyholders and general creditors share ratably, and that in the absence of some statutory preference, no preference exists. Couch, supra, 22:79 and 84. LSA-R.S. 22:749(E) recognizes a preference insofar as secured creditors are secured to the extent of their security and become general creditors insofar as the balance (if there remains one).
The trial court erred in failing to recognize the exclusivity of the scheme discussed hereinabove. Plaintiff has obtained a preference if he gets the right of dissolution. He is not, however, a secured creditor. Dissolution proceedings necessarily and rehabilitation proceedings commonly require the sale of assets. The liquidator or rehabilitator must be able to rely on the public records to disclose encumbrances. One cannot assume that management of the insurer in liquidation or rehabilitation will be cooperative. Management ceases to conduct the business of the insurer upon the order of rehabilitation. LSA-R.S. 22:736(A). The facts of this case exemplify that secret equities frustrate the function and purpose of the scheme. Roger LeBlanc testified that he opposed the rehabilitation proceedings on the basis that First Republic's assets exceed its liabilities.[9] *1383 First Republic wholly owned Commonwealth, whose assets included the disputed property. The disputed property was therefore an asset approximating a value of $437,400.00 (the purchase price in 1975). Defendant liquidated Commonwealth, including the $437,400.00 asset, into First Republic in furtherance of the statutory mandate to remove the causes necessitating the rehabilitation proceedings. Encumbered with the vendor's right of dissolution, however, the property's value was much less than its worth on paper, if not almost nonexistent.
Plaintiff's proof of claim submitted in Roger LeBlanc's bankruptcy proceedings lists a total of $888,365.13, from "notes representing sales of land and/or cash advances made by me to Roger J. LeBlanc...." Included in this figure is the promissory note for the $437,400.00 purchase price of the property involved herein. Plaintiff received approximately $180,000.00 from the bankruptcy proceedings. A proof of claim, based upon the right plaintiff asserts in these proceedings, appears not to have been submitted in the liquidation proceedings of Commonwealth or the rehabilitation proceedings of First Republic.
In reaching the conclusion that the statutory scheme at LSA-R.S. 22:732 through 764 is comprehensive and exclusive, we note that similar results have been reached in other jurisdictions presented with issues analogous to this one. In re Liquidation of Security Casualty, 127 Ill.2d 434, 130 Ill.Dec. 446, 537 N.E.2d 775 (1989), involved proceedings in federal court by shareholders defrauded by misrepresentations in the public offering of an insurer's stock, the public offering having resulted from an order by the Director of Insurance to increase capital or submit to liquidation. The insurer "demutualized," converting to stock ownership following the creation of a holding company which sold its own stock and then used the revenue to purchase Security Casualty's stock. The shareholders filed the securities action prior to the order of rehabilitation. Following trial on the merits, judgment was entered in the shareholders' favor. The judgment was filed in the rehabilitation proceedings along with a motion to impose a "constructive trust" upon the stock revenues.[10] The trial court granted the motion, reasoning that Security Casualty "never obtained equitable title to the funds" because the constructive trust attached immediately. Security Casualty, 130 Ill.Dec. at 453, 537 N.E.2d at 782. The Illinois Supreme Court reversed, reasoning that the distribution priorities set forth in the liquidation statutes are exclusive and that a preference based on an equitable remedy outside the scheme is precluded.
In Abraugh v. Gillespie, 203 Cal.App.3d 462, 250 Cal.Rptr 21 (1988), the court determined that the "excusable neglect" standard for setting aside court orders where a litigant establishes failure to comply with certain procedural requirements due to "mistake, inadvertence, surprise or excusable neglect,"[11] was inapplicable to special proceedings under the California Insurance Code insolvency statutes. The court held that the statutory scheme for insolvency proceedings was comprehensive, and that the rules of civil procedure could not operate to extend filing periods contained in the scheme. Gillespie, 250 Cal.Rptr at 24-25. Implicit in Gillespie's holding is that the superimposing of the procedural rule would frustrate the function of the scheme in orderly and expediently resolving claims.
For the reasons discussed hereinabove, we believe that the rehabilitator or liquidator of an insurance company under the comprehensive special statutory scheme must rely on the public records in order to function effectively and fairly. The scheme represents the legislative will *1384 in balancing the interests of policyholders, creditors, and claimants and should not be derogated from in these circumstances.
Accordingly, the decision of the trial court is reversed at plaintiff's costs.
REVERSED AND RENDERED.
NOTES
[1] By order of the Nineteenth Judicial District Court dated September 26, 1977, Bernard as the Commissioner of Insurance of the State of Louisiana was appointed rehabilitator of First Republic pursuant to LSA-R.S. 22:735-36. This order was signed by the author of this opinion, then district judge on the Nineteenth Judicial District Court, who presided over the rehabilitation proceedings. The parties, when questioned prior to the commencement of oral argument, expressed no problem with or objection to the author's sitting on this panel.
[2] The two LeBlancs are unrelated.
[3] LSA-R.S. 9:2721 provides, in pertinent part:

No sale, contract ... or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.
[4] LSA-R.S. 9:2722 provides in pertinent part:

Third persons or third parties so protected by and entitled to rely upon the registry laws of Louisiana now in force and effect and as set forth in this Chapter are hereby redefined to be and to include any third person or third party dealing with any such immovable or immovable property or acquiring a real or personal right therein as purchaser ... and all other third persons or third parties acquiring any real or personal right, privilege or permit relating to or affecting immovable property.
[5] The act of sale was not offered into evidence in Buoni. Robertson v. Buoni, 504 So.2d 860, 861 (La.1987).
[6] Both the original sale and subsequent transfers occurred prior to the effective date of 1984 La. Acts, No. 331 § 1; therefore, all reference to the Civil Code and specific articles thereof will be to the Louisiana Civil Code of 1870.
[7] These facts should be distinguished from an act of sale which reflects a portion of the purchase price unpaid or is ambiguous as to whether the purchase price has been paid.
[8] We consider Commonwealth, First Republic, and Roger LeBlanc to be substantially the same person (juridical or real) for purposes of LSA-R.S. 9:2722. Cf., Hill v. Doctors Park, Inc., 501 So.2d 987 (La.App. 2d Cir.1987) (where a corporate officer was held distinct from the corporation and accorded the status of a third party under LSA-R.S. 9:2722).
[9] The September 22, 1977, judgment of rehabilitation, however, was rendered pursuant to stipulation and placed First Republic in voluntary rehabilitation.
[10] A "constructive trust" under Illinois law arose at the time the impropriety (i.e., the fraud) occurred. In re Liquidation of Security Casualty Co., 127 Ill.2d 434, 130 Ill.Dec. 446, 537 N.E.2d 775, 779 (1989).
[11] California Code of Civil Procedure § 473; Arbraugh v. Gillespie, 203 Cal.App.3d 462, 250 Cal.Rptr. 21, 24 (1988).