STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

16-667


GARY N. MORGAN

VERSUS

CRAIG STEPHEN PARDUE, ET AL.



**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 47,733
HONORABLE JOHN C. REEVES, DISTRICT JUDGE

**********

PHYLLIS M. KEATY
JUDGE

**********

Court composed of Jimmie C. Peters, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.


AFFIRMED.


J. W. Seibert, III
Madaline Cross Gibbs
Seibert & Gibbs, PA
Post Office Box 2038
Vidalia, Louisiana 71373
(318) 336-9676
Counsel for Plaintiff/Appellee:
    Gary N. Morgan

**Stephen Babcock**
**Chase Tettleton**
**Babcock Partners, LLC**
**10101 Siegen Lane, Suite 3C**
**Baton Rouge, Louisiana  70810**
**(225) 344-0911**
**Counsel for Defendant/Appellant:**
         **Craig Stephen Pardue**

**Amanda Smith Pardue (Guillory)**
**In Proper Person**
**256 Arcadia Lane**
**Kinder, Louisiana  70648**
**(318) 339-7337**
**Defendant/Appellee**

**Robert E. Clark**
**Attorney at Law**
**Post Office Box 888**
**Vidalia, Louisiana  71373**
**(318) 336-5886**
**Counsel for Defendants:**
         **Craig Stephen Pardue**
         **Leslie Pardue**
         **CLS Hunting Club, LLC**

**William A. Yarbrough**
**Attorney at Law**
**Court Appointed Curator**
**109 Carter Street**
**Vidalia, Louisiana  71373**
**(318) 336-5338**
**Counsel for Defendant:**
         **Unopened Succession of Stafford Weston Pardue**

**KEATY, Judge.**

Appellant, Craig Stephen Pardue, appeals the trial court's judgment dissolving a property sale and awarding Appellee, Gary N. Morgan, setoffs and credits. For the following reasons, the trial court's judgment is affirmed.

## FACTS & PROCEDURAL HISTORY

Gary owned eighty acres of immovable property in Concordia Parish, which he placed into the Conservation Reserve Program (CRP) through the Farm Service Agency (FSA). The CRP pays a yearly rental payment in exchange for farmers removing environmentally sensitive land from agricultural production and planting species that will improve environmental quality.[1] By entering into a CRP contract with the FSA, Gary would receive a certain number of annual rental payments as long as he followed CRP rules and regulations.

After the CRP contract was executed, Gary negotiated the sale of the property to Craig. On September 18, 2009, the property was sold by Credit Deed to Amanda Pardue, Craig's then-wife, and their two children, Leslie Pardue and Stafford Pardue (collectively "the Pardues").[2] Amanda retained a 40% interest in the property, and the children each retained a 30% interest. The Credit Deed provided that Gary would be paid $110,000.00 for the property as follows: a $74,000.00 cash down payment and a $36,000.00 promissory note payable at 5% interest and maturing in five years. It contained a reservation whereby Gary was to retain all CRP payments for ten years, which equaled $5,484.00 per year, due on the 1st of October of each year beginning October 1, 2009; however, the Pardues

_____

[1] United States Department of Agriculture (USDA), Farm Service Agency: Conservation Reserve Program (2016).

[2] Since we discuss two contracts in this matter, we will refer to the contract executed between Gary and the Pardues as the "Credit Deed." We will refer to the contract executed between Gary and the FSA as the "CRP contract."

had the option to pay Gary for all remaining CRP payments by making a lump sum payment at any time to satisfy the reservation. Craig, Amanda, Leslie, and Stafford all signed the Credit Deed as "Vendees." The promissory note was attached and paraphed "Ne Varietur" to identify it with the Credit Deed.

After the sale, Craig and Amanda divorced. Pursuant to a Partition of Community Property and an Amended Partition of Community Property, Amanda's 40% interest in the property was transferred to Craig. The settlement provided that Craig would hold Amanda harmless for any debt associated with the property. On December 9, 2010, Craig, Stafford, and Leslie donated their interest in the property to CLS Hunting Club, LLC. A document in the record from the Louisiana Secretary of State's corporate database lists Craig, Stafford, and Leslie as managers of CLS Hunting Club. The record indicates that following that donation, Stafford died, and his interest was subsequently split between Craig and Leslie.

In 2010, Craig failed to make an annual payment on the promissory note. Gary agreed to forego that annual payment and recalculate the remaining payment schedule with interest. In 2011, Craig made a payment of $10,027.45. In 2012, Craig attempted to make a $1,500.00 payment; however, Gary refused to accept that payment. On December 11, 2012, the FSA cancelled the CRP contract on the property based on Gary's failure to follow CRP rules and regulations and requested reimbursement from him of the following: all annual rental payments plus interest totaling $16,915.66; all cost share payments plus interest totaling $5,751.88; and liquidated damages totaling $1,370.94. Gary's Social Security benefits were also levied because of the cancellation. On September 18, 2014, which was four days before trial in this matter, Craig tendered a check in the amount of $34,048.52

2

which, according to Craig, represented the outstanding balance due on the maturity date of the promissory note. Upon Gary's refusal to accept this payment, that amount was deposited into the registry of the trial court.

Gary filed the instant Petition In Suit To Dissolve Sale Of Immovable Property pursuant to La.Civ.Code art. 2561 against Craig, Amanda, Leslie, the Unopened Succession of Stafford Weston Pardue, and CLS Hunting Club, asserting their failure to make payments due as required by the promissory note. Gary also alleged that the defendants failed to abide by the rules and regulations of the CRP program, which caused the CRP contract to lapse and deprive him of the annual payments he was entitled to receive from the CRP program, as well as make him liable for the return of all payments previously received with interest, liquidated damages, and all cost-share amounts plus interest.

Following a bench trial on September 22, 2014, judgment was rendered in favor of Gary as follows: the sale of the property was dissolved subject to a return of all consideration paid to Gary, less and except the following setoffs and credits:

a) The repayment of FSA of $16,915.66 ($16,452.00 in principal and $463.66 in interest) which is the amount of the three (3) CRP payments which [Gary] actually received subsequent to the sale plus interest;

b) The balance of the retained and reserved CRP payments which amounts to $38,388.00;

c) The cost share due by [Gary] to FSA in the amount of $5,751.88;

d) The liquidated damages due to FSA in the amount of $1,370.94;

e) Lost hunting lease rentals in the amount of $1,500.00 for four (4) years, totaling $6,000.00.

The trial court indicated in the judgment that "[t]he total damages to be paid to [Gary] are $68,426.48."

3

Craig appealed the trial court's judgment. In *Morgan v. Pardue*, 15-149 (La.App. 3 Cir. 10/7/15), 175 So.3d 1053, this court held that the judgment dissolving the sale was an indeterminate, nonappealable judgment. This court dismissed the appeal and remanded the matter to the trial court with instructions to make certain the description of the subject property and the amounts owed by each party. After the matter was clarified by the trial court by an Amended Judgment, Craig again appealed.

Craig is the only defendant appealing the trial court's judgment, asserting the following assignment of error:

> A sale can be dissolved when a party fails to make payment. Because [Craig] made or attempted to make payment as set forth in the promissory note – and losing CRP payments was due to [Gary's] own failure to notify the USDA FSA – the trial court erred in dissolving the sale between [Gary] and the Pardues.

## STANDARD OF REVIEW

The applicable standard of review was discussed in *Richard v. Khalif*, 15-685, p. 3 (La.App. 3 Cir. 2/3/16), 185 So.3d 259, 262, as follows:

> Absent manifest error or unless it is clearly wrong, an appellate court may not set aside a trial court's finding of fact. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "The factual determination of the trial court particularly when based upon an evaluation of the credibility of opposing witnesses should not be disturbed on appeal unless manifestly erroneous." *Lewis v. Liberty Mut. Ins. Co.*, 215 So.2d 138, 140 (La.App. 3 Cir.1968). Accordingly, if the trial court's findings were reasonable based upon the entire record and evidence, we must not reverse. *Housley v. Cerise*, 579 So.2d 973 (La.1991).

## DISCUSSION

In his only assignment of error, Craig contends that the trial court erred in dissolving the sale of the property. We disagree.

4

The sale of the immovable property at issue was dissolved pursuant to La.Civ.Code art. 2561, which provides:

> If the buyer fails to pay the price, the seller may sue for dissolution of the sale. If the seller has given credit for the price and transfers that credit to another person, the right of dissolution is transferred together with the credit. In case of multiple credit holders all must join in the suit for dissolution, but if any credit holder refuses to join, the others may subrogate themselves to his right by paying the amount due to him.

> If a promissory note or other instrument has been given for the price, the right to dissolution prescribes at the same time and in the same period as the note or other instrument.

The seller's right to dissolve the sale for the buyer's failure to pay the purchase price under La.Civ.Code art. 2561 is "an entirely separate and independent remedy from the right of the seller to sue for any amount due on the purchase price." *Toler v. Toler*, 337 So.2d 666, 668 (La.App. 3 Cir. 1976). "The right to dissolution of a sale of an immovable for nonpayment is not contingent on the absence of a third party purchaser. A vendor seeking dissolution of the sale may do so even after the property has left the hands of the original purchaser." *Robertson v. Buoni*, 504 So.2d 860, 863 (La.1987). Additionally, "[i]n the sale of immovables, the resolutory action of dissolution exists against the original purchaser and also third persons acquiring real rights or title to the property." *Id.* at 862.

Craig's trial testimony shows that he was one of the defendants who owned the property in question. This ownership is shown in the Partition of Community Property and the Amended Partition of Community Property. It is also evident in the Donation whereby Craig, Leslie, and Stafford donated their undivided interest to CLS Hunting Club. The foregoing documents were entered into evidence in this matter. According to the evidence in the record, Craig remains a managing

member of CLS Hunting Club. As such, Craig is liable for performance of the Credit Deed.

The Credit Deed, which was admitted into evidence at trial, provided for payment in the form of a $36,000.00 promissory note, which was payable at 5% interest with a five-year maturity date. Craig contends that he paid, or attempted to pay, the promissory note. He avers that his payments were refused by Gary. Craig argues that he did not fail to pay the purchase price.

Craig testified at trial that he failed to make an annual payment in 2010, because he was going through a divorce. Craig stated that he made payments in 2011 and 2012; although, they were rejected by Gary. As to the 2011 payment, Craig testified that he paid $10,027.45 and that he was unaware that he owed an additional $859.00. He testified that he did not remember telling Gary or "Mrs. Morgan" that he would return with the remainder of the payment. As for the 2012 payment, Craig stated that he tendered $1,500.00, which Gary refused. He revealed that he made no payments in 2013 or 2014 since he was sued by Gary. Craig's testimony shows that he failed to make the required payments to satisfy the promissory note contained in the Credit Deed.

Gary's trial testimony also indicated that he did not receive payment in 2010. Gary stated that he and Craig agreed to forego the 2010 payment and recalculate the remaining payment schedule. According to Gary's testimony, the remaining payment schedule, or amortization, was prepared by attorney Brent Gore. The amortization was entered into evidence at trial and shows that the following amounts, including interest, were due: $10,859.18 in 2011; $8,640.00 in 2012; $8,080.00 in 2013; $7,920.00 in 2014; and $7,560.00 in 2015.

6

At trial, Craig disputed the existence of the amortization. He stated that in 2010, Gore was his and Gary's mutual attorney. When asked whether Gore prepared an amortization following Craig's failure to pay in 2010, he responded: "It's not in paper. I don't have it." Craig stated that he did not know about the amortization and that he did not "remember seeing it." When presented with the amortization at trial, Craig testified that Gore may have prepared it.

With respect to the amortization, Gary testified that in 2011, Craig "brought a check for $10,027.45 and four steaks to the house[] and was going to be back the next week with the additional interest he left off." Gary stated that Craig failed to pay the additional interest. Gary recalled receiving $1,500.00 from Craig in 2012, but stated that he returned the payment to Craig since it was less than the amount owed pursuant to the amortization. Gary testified that pursuant to the amortization, "I was going to get another check for $7,200.00 in principle [sic] and my interest and my payment should have been like $8,640.00, and I got 1,500." Gary testified that he received no additional payments prior to his filing suit in this matter.

In addition to promissory-note payments, the Credit Deed provided that Gary was to receive ten years of CRP payments in the amount of $5,480.00 per year. The CRP payments ceased when the CRP contract was terminated on December 11, 2012, through a letter prepared on USDA letterhead by Kevin H. Case, County Executive Director of the Concordia Parish Farm Service Agency. Case addressed the letter to Gary, noting that on September 18, 2009, Gary sold property which was subject to the CRP contract. Case stated: "You failed to notify this office of this change[,] and you continued to receive the CRP payments for 2010 and 2011." Case cited the following CRP rules which were violated:

7

> Handbook 2-CRP (Rev. 5) Amend.8 Par.555 states in part: An eligible person may become successor-in-interest to CRP-1 if:
>
> - land has been sold
>
> - there has been a change in owner or operator
>
> - a foreclosure or involuntary loss of land occurs
>
> New landowners and authorized estate representatives have an opportunity to succeed to CRP-1.
>
> - If a revised CRP-1 is not signed within the 60 calendar days from the date of notification by County Committee or County Executive Director, CRP-1 shall be terminated.
>
> - No successor-in-interest will be allowed.

Case informed Gary that the Concordia County Committee has cancelled his CRP contract because he "voluntarily lost control of all land under CRP contract number 465[,] and there is no successor-in-interest."

Craig contends the foregoing correspondence shows that Gary was obligated to provide notice of new ownership. Craig alleges that Gary's failure to report this change resulted in the loss of CRP payments. We disagree.

The Credit Deed contains the following language: "Vendee hereby agrees to abide by the government regulations existing on said property being sold relating to the CRP-23." Craig signed the Credit Deed in his capacity as one of the four "Vendees." Craig agreed at trial that the Credit Deed contained the governmental regulations clause. Thus, Craig, as vendee, was required to follow CRP regulations by notifying the office of a change in ownership by revising a CRP-1.

At trial, however, Craig seemed unaware that he was required to notify the USDA FSA in order to succeed to the CRP contract as can be seen by the following colloquy with Gary's counsel:

Q    Did you - - when you became owner - - held ownership interest in this, you have stated that you were aware of the provisions of the - - of the credit sale deed. Were you aware that the credit sale deed asked you to abide or they [sic] buyers agree to abide by the rules and regulations of the CRP program, or the USDA?

A.    We were asked to abide by their rules of the hunting part, cutting trees or anything like that. We never had a contract. . . .

. . . .

Q    So it's very briefly stated here at the bottom of page - - of this page, that you agree to abide by the government regulations existing on said property being sold relating to CRP 23.

A.    Correct. That's regulations of the no hunting and no cutting trees and no four-wheeler riding out in the middle of it, or any of that. As far as the original contract, as I stated, I don't know what was in the original contract. I never seen a CRP contract.

Craig testified that in 2012, he learned of Gary's failure to provide notification of ownership change when he went to the USDA FSA office seeking permission to dig a pond on the property. Craig stated that upon arrival, he spoke with Case, who advised that permission hinged upon Craig's ability to prove ownership of the property. Craig said that he proved the ownership necessary to dig a pond by subsequently presenting the hunting club's Articles of Incorporation. Thereafter, Craig stated that Case informed him that Gary had been claiming ownership of the property for the past three years and that Craig "could not do a thing to preserve that [CRP] contract, that it had been voided." Craig testified that he made approximately fifteen trips to the FSA office in 2012 to rectify the problem. Craig testified that during those visits, he "tried to succeed. They told me I could not because of the fact the contract had been broken." The following trial colloquy then ensued between Gary's counsel and Craig:

Q.    So in 15 times visiting the USDA [FSA] office in the Fall of 2012, no one ever brought you up to speed with what you needed to do to preserve this contract?

A.    No, ma'am[.]"

Two letters submitted into evidence by Gary's counsel, however, refute Craig's alleged lack of knowledge regarding his notice requirement. The first letter was dated September 28, 2012, prepared by Case, addressed to "Craig Stephen Pardue" at "2090 Poole Road[,]" and sent via certified mail. Therein, Case referenced Craig's prior visit to "this office back in the spring [wherein he] inquired about the Conservation Reserve Program." Case noted that during their conversation, Craig informed him that Craig had purchased land belonging to Gary a few years prior. Case revealed that "[t]his parcel of land has an active CRP contract on it." He further noted in the letter:

> Please be informed that you have no more than 60 calendar days from the date of the letter to provide this office with acceptable proof of ownership and complete a CRP contract succession in accordance with FSA handbook 2-CRP(Rev.) 5, subparagraph 555-D. A copy of this procedure is enclosed for your information. . . . If you choose not to complete a CRP contract succession within 60 days, the CRP contract associated with this parcel of land will be terminated.

A second letter prepared by Case was also dated September 28, 2012, addressed to "CLS Hunting Club LLC" at "2090 Poole Road[,]" and sent via certified mail. It contained the same information as the letter sent to Craig.

When asked at trial whether he received letters from the USDA, Craig admitted that he received some letters although they were being sent to the wrong address. He stated that:

> The original address that I lived at for 15 years, which was Poole Road. I didn't catch it until I had went over it and started reading it and trying to figure out why I didn't receive some of your letters and realized a lot of them were addressed wrong.

Craig testified that he did not "remember seeing a letter, of this sort, stating that I . . . had 60 calendar days from this date of the letter to provide the office proof of

ownership to complete the CRP contract." He revealed that he "never received any of that, nor has it got the right mailing address on it." Despite his testimony indicating that he failed to receive the two letters, they were produced by Craig's counsel and given to Gary's counsel through discovery. When asked whether he provided a mailing address to the CRP, Craig testified: "Yes, I gave them a mailing address immediately. The day I went and asked them about the shallow water pond[,] I gave them correct addresses."

Amanda testified at trial. She stated that the Poole address was her and Craig's address when they were married. She asserted that following the divorce, she immediately moved. She indicated that Craig moved from the house on Poole Road once it was sold. Amanda revealed that she never dealt with the FSA; rather, Craig and Gary dealt with the FSA. Her only recollection of dealing with the FSA was when she picked up a letter from Case that "was made out to Craig." Amanda could not recall the contents of the letter. She remembered that after she was served with the suit in this matter, she obtained a copy of a letter when she went to the FSA office. A letter was submitted into evidence which was dated October 10, 2012, prepared by Case, addressed to "Amanda Smith Pardue" at "2090 Poole Road[,]" and sent via certified mail. It contains the same information as the two letters discussed above. When presented with this letter at trial, Amanda testified that she could not recall if that was the letter she "picked up from Kevin Case."

Gary testified at trial that, following the sale, he was no longer the owner although he was still involved with the property as an operator. He indicated that pursuant to the CRP contract, the property had to remain clean or green. Gary stated that since he had the equipment and tractors, he mowed the property and planted trees in accordance with the CRP contract. Craig agreed with this in his

11

testimony by stating that "Gary's [sic] mowed it." Gary admitted that he signed a statement with the USDA FSA every year as the operator of the property in accordance with the CRP contract. Gary advised that in order for him to be considered the operator, he executed two leases with the Pardues. The leases were never filed, but they were submitted into evidence. Gary believed that the leases were executed to fulfill the USDA's requirements. Craig agreed at trial that he signed the leases.

When Gary was asked whether he thought he was complying with the USDA following the sale until 2012, he testified:

> I thought I was doing what I was supposed to do, keeping it clean or keeping it green, and the FSA - - the government informed me that once you sell a piece of property then you lose your interest in that property and I had no way to - - I couldn't correspond to them. . . . Once you sold that property, you lose your control.

He testified that he informed Craig that the USDA will "either get the information or they going to cancel this contract." Gary stated that there was nothing he could have done to help Craig succeed to the government contact.

The trial court assessed the truthfulness and candor of witnesses and made its factual findings based upon the evidence and its credibility determinations. Strict deference is given to a trial court's credibility determinations. *Melder v. Brookshire's Grocery Co.*, 14-669 (La.App. 3 Cir. 12/10/14), 154 So.3d 781. The trial court's reliance on Gary's testimony, rather than Craig's testimony, was reasonable. The trial court's choice between two permissible views of the evidence can never be manifestly erroneous. *Sharbeno v. Allstate Ins. Co.*, 14-670 (La.App. 3 Cir. 12/10/14), 153 So.3d 576.

After thoroughly reviewing the record, we find that the evidence supports the trial court's ruling that Craig failed to succeed to the CRP contract, which

deprived Gary of the annual payments he was entitled to receive from the CRP program. The evidence further supports the trial court's ruling that Craig failed to pay the purchase price. We, therefore, find that the trial court's ruling in its Amended Judgment is not manifestly erroneous.

## CONCLUSION

The trial court's Amended Judgment dissolving a property sale and awarding Appellee, Gary N. Morgan, setoffs and credits, is affirmed. All costs associated with this appeal shall be assessed to Appellant, Craig Stephen Pardue.

**AFFIRMED.**